721 A.2d 1075

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Durrell GRAHAM, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1997.

Decided Dec. 22, 1998.

474

Joseph P. Burt, Erie, for Durrell Graham.

Joseph P. Conti, Christian A. Trabold, Erie, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION ANNOUNCING JUDGMENT OF THE COURT

NIGRO, Justice.

This is an appeal from an Order of the Superior Court affirming Appellant's sentence for Possession and Possession With Intent to Deliver narcotics. The issue in this appeal is whether evidence seized from Appellant should be suppressed. Because we find it should, we reverse.

The facts of this case as found by the trial court established that on July 18, 1994, at approximately 1:45 a.m., K–9 Officer Terry Dawley of the Erie Police Department was alone, on routine patrol in the area of 23rd and German Streets with his dog "Cujo." N.T. 6/26/95. This area was known to Officer

Dawley as a high crime, high drug-trafficking area. Officer Dawley noticed three black males on the porch of the Gateway Day Care Center. Recognizing those individuals, he recalled that there was an outstanding arrest warrant for one of the three, a Mr. Ronnie Beason. He recognized the other two as Appellant and Mr. Terry Jones. As he watched the three men, they began walking in an easterly direction on East 23rd Street. Officer Dawley then yelled for them to stop in order to apprehend Mr. Beason. When they complied, the Officer told Mr. Beason that he had a warrant for him and directed him to lie down. Officer Dawley then looked at Appellant, standing approximately three feet from him, and noticed a bulge in his front left pocket. In order to allay his concerns for safety, Officer Dawley patted Appellant's front and felt what he believed, and Appellant confirmed, to be money in his front pocket. Officer Dawley then patted Appellant's back pockets and felt what he believed was a Lifesavers Holes container. He shined a flashlight down into the pocket and noticed a Lifesavers Holes container which appeared, and was later determined to contain, 3.37 grams of crack cocaine.

Following arrest, Appellant filed a Motion to Suppress which was denied by the trial court.

On August 8, 1995, following a non-jury trial, Appellant was convicted of Possession and Possession With Intent to Deliver 3.37 grams of crack cocaine. The Superior Court affirmed. Appellant then filed a Petition for Allowance of Appeal with this Court claiming the seizure of crack cocaine from his back pocket exceeded the scope of the search permitted under the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution. We granted allocatur to determine whether the Superior Court properly affirmed the trial court's denial of Appellant's Motion to Suppress.

The standard of review for the denial of a motion to suppress evidence is firmly established. When deciding a motion to suppress, the trial court must make findings of fact and conclusions of law determining whether evidence was

obtained in violation of a defendant's rights. *Commonwealth v. Hubble,* 509 Pa. 497, 530, 504 A.2d 168, 185 (1986). The burden of proof that a defendant's rights were not violated lies with the Commonwealth. Thus, when reviewing the suppression court's denial of a defendant's motion, we consider only the evidence of the prosecution, and so much of the evidence for the defense that remains uncontradicted. If this evidence supports the factual finding, we may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Cortez,* 507 Pa. 529, 532, 491 A.2d 111, 112 (1985) (citation omitted), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297, (1985); *Commonwealth v. Slaton,* 530 Pa. 207, 208, 608 A.2d 5 (1992)(in reviewing a suppression court's ruling, we are bound by those factual findings of the suppression court which are supported by the record).

■ The first step in our analysis is to determine whether Officer Dawley was justified in conducting a *Terry* frisk of the Appellant.

In *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276, (1969), this Court set out the requirements for a *Terry* frisk as follows:

[e]ven if probable cause to arrest is absent, the police officer may still legitimately seize a person ... and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, if the police officer observes unusual and suspicious conduct on the part or the individual seized which leads him to reasonably conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous.

*Hicks,* 434 Pa. at 158–59, 253 A.2d at 279. In *Commonwealth v. Pinney,* 474 Pa. 210, 378 A.2d 293 (1977), the Supreme Court further outlined the requirements for a *Terry* search, explaining it is justified:

... on the ground that it protects a police officer's safety. The United States Supreme Court was careful to point out,

however, in both *Terry* and the companion case of *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), that in the case of a self-protective search for weapons, a police officer must be able to point to particular facts from which he could reasonably infer that the individual was armed and dangerous.

*Pinney*, 474 Pa. at 216, 378 A.2d at 296.

Applying the stop and frisk concept outlined by *Terry*, and adopted by this Court in *Hicks*, to the instant case, we note that Officer Dawley was alone, late at night, with three individuals. Further, in order to effectuate the arrest of Ronnie Beason, Officer Dawley had to turn his back on Appellant. At that point, the officer, noticing a bulge in Appellant's front pants pocket, feared for his safety. On these facts, we find Officer Dawley reasonably concluded that Appellant was armed, and criminal activity was afoot, and therefore conducted a lawful pat-down search for weapons.[1]

■ Having determined Officer Dawley was justified in performing a pat-down search of Appellant for his own safety, we next examine Appellant's contention that Officer Dawley exceeded the scope of a permissive pat-down. Under Pennsylvania caselaw, the police may conduct "a limited search of an individual's outer clothing in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others." *Commonwealth v. Hicks*, 434 Pa. at 158, 253 A.2d at 279 (citing *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879). *See also Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)(the purpose of this limited search is not to discover evidence of crime but to allow the officer to pursue his investigation without fear of violence). In *Pinney*,

---

**1.** Officer Dawley recognized Appellant from a recent drug arrest. The Commonwealth asks this Court to follow the Superior Court's lead in *Commonwealth v. Patterson*, 405 Pa.Super. 17, 22, 591 A.2d 1075, 1078 (1991), and take judicial notice that drug dealers are armed and dangerous, thus removing the requirement that a police officer have a reasonable suspicion that a suspect is armed and dangerous when that officer confronts a known drug dealer. However, because on the facts of this case we find that Officer Dawley reasonably articulated his belief that Appellant was armed and dangerous, he conducted a lawful pat-down. Accordingly, an analysis under *Patterson* is not necessitated.

the Court explained that although *Terry* justifies a search of outer clothes, "any 'search' of articles discovered as a result of the pat-down must also be justified by the circumstances which give rise to the original interference." *Pinney,* 474 Pa. at 216, 378 A.2d at 296 (citing *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879). *See also Commonwealth v. Canning,* 402 Pa.Super. 438, 440, 587 A.2d 330, 331 (1991)(agreeing with *Terry* that because the sole justification for the search is the protection of the officer, it must be confined in scope to a search for weapons).

In *Pinney,* police officers approached three individuals who matched the description for suspects in a recent homicide. After the three men produced identification inconsistent with the names of the murder suspects, one of the officers conducted a pat-down search and felt a bulge in defendant's pocket which the officer testified might have been a small automatic weapon. After the officer ordered the defendant to empty his pocket, the bulge was revealed to be a plastic bag containing marijuana and six foil packets containing diamphetamine tablets. The Commonwealth argued that the search of the defendant fell under the ambit of *Terry.* Concluding that the police officer's search of appellant was unjustified from its inception, the Court in *Pinney* stated:

> [w]e need not address the second issue which *Terry v. Ohio* would otherwise present whether the police officer's further examination of the plastic bag and foil wrappers, after it had become obvious that this "bulge" in appellant's coat was not a weapon, was unconstitutional in that the search was not reasonably related in scope to the circumstances which justified the governmental intrusion in the first place. *See Commonwealth v. Freeman,* 222 Pa.Super. 178, 293 A.2d 84, 86 (1972).

*Pinney,* 474 Pa. at 217, 378 A.2d at 297.

■ We have long accepted the principles of *Terry* and its companion case *Sibron,* that if the protective search goes beyond that which is necessary to determine whether the suspect is armed, it is no longer valid, and its fruits will be suppressed. *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884; *Sibron,*

392 U.S. at 65–66, 88 S.Ct. at 1904. *See also Commonwealth v. Norris,* 498 Pa. 308, 316, 446 A.2d 246, 249 (1982); *Pinney,* 474 Pa. at 217, 378 A.2d at 296; *Hicks,* 434 Pa. at 158, 253 A.2d at 279. Therefore, where the police extend a frisk beyond *Terry*'s limited purpose, the Commonwealth needs a separate exception to justify the search and any subsequent seizure of an individual's personal property.

█ In the case at bar, Officer Dawley's pat-down of Appellant immediately relieved his fear that Appellant was not carrying a weapon. At the suppression hearing, Officer Dawley described his reaction to seeing a bulge in Appellant's pocket:

A. I patted the bulge, and it felt like money. I asked Durrell [the Appellant] if it was money, and he said it was.

Q. All right. After that what did you do?

A. I continued to pat Durell. [sic] I went around to the rear of him and patted his back pockets. In his right rear pocket I felt what I believed to be a Lifesavers Holes bottle.

N.T. June 26, 1995 at 8.

This testimony reveals that while patting down Appellant's outer garments, before shining his flashlight into Appellant's back pocket, Officer Dawley ascertained that Appellant was not armed and dangerous. Therefore, once Officer Dawley's pat-down revealed Appellant was not carrying a weapon, any continued search exceeded the scope authorized under *Terry.* Thus, Officer Dawley's extended search, and subsequent seizure of the contraband from Appellant's back pocket cannot be justified under *Terry.*

█ Our inquiry does not end here however, because the Commonwealth also argues that the contraband was visible to Officer Dawley from a lawful vantage point, and was thus lawfully seized under the "plain view" exception. We disagree. Under the "plain view" doctrine "it has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject

to seizure and may be introduced as evidence." *Common-wealth v. Davenport*, 453 Pa. 235, 244, 308 A.2d 85, 89 (1973)(quoting *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968)). Thus, "plain view" justifies a warrantless seizure of evidence when its incriminating character is immediately apparent, the officer is lawfully located in a place where the object can be plainly seen, and the officer has "a lawful right of access to the object itself." *Commonwealth v. McCullum*, 529 Pa. 117, 132, 602 A.2d 313, 320 (1992)(quoting *Horton v. California*, 496 U.S. 128, 137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)).

In *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502, (1983), the U.S. Supreme Court examined the application of "plain view" to the seizure of contraband by police, and found that since any evidence seized will be in plain view at the moment of seizure, the "question of whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question." *Brown*, 460 U.S. at 737, 103 S.Ct. at 1541 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971) (plurality opinion)). *See also Commonwealth v. Jeffries*, 454 Pa. 320, 327, 311 A.2d 914, 918 (1973) ("inherent in the plain view doctrine is the principle the seized object must not have been put in plain view as a result of unlawful police conduct."); *Commonwealth v. Jackson*, 461 Pa. 632, 640, 337 A.2d 582, 585 (1975) ("[f]undamental to the application of the 'plain view' doctrine is the principle that the seized objects must not have been put in plain view as a result of unlawful police conduct."). In analyzing whether the plain view doctrine provided an independent exception to the warrant requirement, the *Brown* Court concluded that:

> ... "plain view" provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. "Plain view" is perhaps better understood, therefore, not as an independent "exception" to the warrant clause, but simply as an exten-

sion of whatever the prior justification for an officer's "access to an object" may be.

460 U.S. at 738–39, 103 S.Ct. at 1541.

Therefore, under the Fourth Amendment, an officer may not seize contraband in plain view unless a prior justification provided the officer a lawful "right of access to the item." *Id.* at 738, 103 S.Ct. at 1541. This principle was followed in Pennsylvania by *Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246, (1982), where this Court examined at what point the proper bounds of an exigent warrantless search is extended into an unreasonable intrusion, warranting suppression of evidence discovered in plain view. In *Norris,* when two police officers heard loud music emanating from the defendant's door, knocked on the door for several minutes and identified themselves before breaking down the door, the Court found the officers' forcible entry into, and limited search of the apartment was justified by exigent circumstances. The Court noted that an officer's seizure of a knife discovered on a nightstand was justified by the plain view doctrine because the exigencies of the situation had already justified the intrusion into the bedroom where the knife was discovered. *Id.* at 316, 446 A.2d at 250. However, when the officers then executed a thorough search of the bedroom, uncovering a gun, the Court suppressed it, finding that the "gun could not have been seen without a thorough search of the bedroom. That search occurred after defendant was securely held and after it was apparent there was no one else in the apartment to endanger the officers." *Id.* at 316, 446 A.2d at 250. Therefore, the *Norris* Court found the plain view doctrine did not validate the seizure of an item discovered in plain view where the search and seizure occurred after the circumstances justifying the initial search no longer existed.

The New York Court of Appeals also provided useful insight for the case at bar when it articulated that the plain view doctrine "establishes an exception to the requirement of a warrant **not to search for an item, but to seize it.**" *People v. Diaz,* 81 N.Y.2d 106, 595 N.Y.S.2d 940, 612 N.E.2d 298, 301 (1993) (emphasis added). This artful distinction between

search and seizure highlights the principle that the plain view doctrine permits police officers to seize contraband that is in their purview if an independent justification gives the officer a lawful right of access to the item, but cannot, on its own, justify an officer extending his or her search for that item. *See Norris,* 498 Pa. at 316, 446 A.2d at 250; *Brown,* 460 U.S. at 738, 103 S.Ct. at 1541.

■ In the present case, the facts do not justify use of the plain view exception to validate Officer Dawley's seizure of the contraband. Officer Dawley admitted during the suppression hearing that his flashlight-aided search of Appellant's back pocket occurred after his pat-down of Appellant revealed no evidence of weapons. Therefore, shining a flashlight into Appellant's back pocket extended the search beyond that authorized by *Terry.* The Commonwealth impermissibly relies on the plain view exception to justify a search, when it was the search that was the predicate in putting the object into plain view. Thus, there was no independent justification to extend the search, i.e. shine the flashlight, once the officer determined that Appellant was unarmed.

However, the Commonwealth argues that Officer Dawley's use of his flashlight to illuminate the contraband does not prevent it from being in plain view. They cite *Commonwealth v. Burton,* 292 Pa.Super. 73, 78, 436 A.2d 1010, 1013 (1981), for the proposition that an officer lawfully in a position to make an observation may enhance his ability to see by the use of a flashlight. *Burton* involved a police officer searching a car incident to a lawful arrest for possession of a handgun without a permit. There, the officer shined his flashlight into the backseat, revealing contraband. The Superior Court found that seizure of the contraband was justified by the plain view exception even though the officer needed a flashlight to illuminate the contraband. However, the reasoning behind *Burton,* that a flashlight may properly illuminate items that would be in plain view during daylight hours, does not apply here, as the Lifesavers Holes container was not an exposed object.

In the present case, Officer Dawley completed the search for weapons authorized under *Terry* before using his flashlight. The subsequent act of shining the flashlight was part and parcel of the search that put the contraband into plain view. Thus, the Commonwealth seeks to use the plain view doctrine, not to validate seizing an already exposed object, but to justify an extended search and subsequent seizure of contraband discovered in the course of a *Terry* stop. Since the plain view doctrine cannot justify extending a warrantless search, *Brown*, 460 U.S. at 738, 103 S.Ct. at 1541, we find that it cannot legitimize Officer Dawley's flashlight-aided search of Appellant's backpocket.

■ The Commonwealth also argues that the contraband was lawfully obtained under the "plain feel" exception recognized in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), but never adopted by this Court. This claim also fails.

In *Dickerson*, the U.S. Supreme Court legitimized the seizure of contraband discovered during the scope of a *Terry* frisk where the officer feels an object whose contour or mass makes its criminal character immediately apparent. *Id.* at 375–76, 113 S.Ct. at 2137. However, noting that the officer in *Dickerson* "determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapons," the Court held that:

> ... the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to "[t]he sole justification of the search [under *Terry* :] ... the protection of the police officer and others nearby." 392 U.S., at 29, 88 S.Ct., at 1884. It therefore amounted to the sort of evidentiary search that *Terry* expressly refused to authorize ...

*Id.* at 378, 113 S.Ct. at 2138–39.

Therefore, the *Dickerson* court illustrated that a search which in any way manipulates the contents of a defendant's pocket is

not authorized under *Terry*. *Dickerson*, 508 U.S. at 378, 113 S.Ct. at 2139.

The *Dickerson* Court also noted that analogy to the plain view doctrine was appropriate, citing *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), for the proposition that where police lack probable cause to believe that the object in plain view is contraband without conducting some further search, the plain view doctrine cannot justify its seizure. *Dickerson*, 508 U.S. at 378–79, 113 S.Ct. at 2138–39. Applying the facts of *Hicks* to its case, the *Dickerson* Court explained that:

> [a]lthough the police were lawfully on the premises, they obtained probable cause to believe that the stereo equipment was contraband only after moving the equipment to permit officers to read its serial numbers. The subsequent seizure of the equipment could not be justified by the plain-view doctrine, this Court explained, because the incriminating character of the stereo equipment was not immediately apparent; rather, probable cause to believe that the equipment was stolen arose only as a result of a further search—the moving of the equipment—that was not authorized by a search warrant.... The facts of this case are very similar. Although the officer was lawfully in a position to feel the lump in respondent's pocket, because *Terry* entitled him to place his hands upon respondent's jacket ... the officer determined that the item was contraband only after conducting a further search, one not authorized by *Terry* or any other exception to the warrant requirement.

*Id.* at 378–79, 113 S.Ct. at 2139.

The Superior Court recently adopted the "plain feel" doctrine in *In the Interest of B.C.*, 453 Pa.Super. 294, 683 A.2d 919 (1996). Subsequently, in *Commonwealth v. Fink*, 700 A.2d 447 (Pa.Super.1997), the Superior Court examined the interplay of "plain feel" and *Terry*, and held that:

> This court now recognizes the seizure of non-threatening contraband detected by an officer's "plain feel" during a pat-down for weapons if the officer is lawfully in a position to

detect the presence of contraband, the incriminating nature of the contraband is immediately apparent and the officer has a lawful right of access to the object. *Interest of B.C., supra* at 305, 683 A.2d at 925 (citing *Minnesota v. Dickerson* ).

*Fink,* 700 A.2d at 450, (citation omitted). The court then noted that " '[i]mmediately apparent' means that the officer conducting the *Terry* frisk readily perceives, without further search, that what he is feeling is contraband." *Id.*, 700 A.2d at 450. Thus, the "plain feel" doctrine only applies under the limited circumstances where the facts meet the plain view doctrine requirements that the criminal nature of the contraband is immediately apparent, and the officer has a lawful right of access to the object. *See Dickerson,* 508 U.S. at 375–76, 113 S.Ct. at 2137; *Fink,* 700 A.2d at 450.

We agree with the Superior Court's adoption of the plain feel doctrine originally articulated in *Minnesota v. Dickerson,* 508 U.S. at 375, 113 S.Ct. at 2137. However, we note that the *Dickerson* Court recognized the plain feel doctrine as an extremely narrow exception to the warrant requirement, finding that even a "squeeze" of the defendant's pocket went beyond the scope of the search authorized by *Terry*. *Id*. at 378, 113 S.Ct. at 2138–39. Further, Pennsylvania jurisprudence follows the principle that a *Terry* frisk must relate, in nature and scope, to the sole justification for the search—a pat-down for weapons to ensure the safety of the police and those nearby. *See Hicks,* 434 Pa. at 158–59, 253 A.2d at 279. Therefore, a *Terry* frisk will only support the seizure of contraband discovered via the officer's plain feel when the incriminating nature of that contraband is immediately apparent to the officer, based solely on the officer's initial pat-down of the suspects outer garments. Once the initial pat-down dispels the officer's suspicion that the suspect is armed, any further poking, prodding, squeezing, or other manipulation of any objects discovered during that pat-down is outside the scope of the search authorized under *Terry*.

Here, the record indicates that after Officer Dawley felt Appellant's back pocket, he shined his flashlight into the

pocket to illuminate its contents. Clearly, the criminal nature of its contents was not immediately apparent. Therefore, since the officer needed to conduct some further search to determine the incriminating character of the contraband, the search and subsequent seizure was not justified under the plain feel doctrine, and was thus unlawful. Since the evidence was seized as a result of an illegal search, it must be suppressed. Accordingly, the Judgment of Sentence is reversed, and a new trial is granted.

Justices ZAPPALA, CAPPY, CASTILLE and NEWMAN concur in the result.