J-A23028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARK DOUGLAS EVANS, | : | |
| | : | |
| Appellant | : | No. 1701 WDA 2013 |

Appeal from the Judgment of Sentence entered on September 23, 2013
in the Court of Common Pleas of Allegheny County,
Criminal Division, No. CP-02-CR-0005630-2013

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED OCTOBER 30, 2014**

Mark Douglas Evans ("Evans") appeals from the judgment of sentence imposed following his conviction of possession of a controlled substance (crack cocaine).[1]  We reverse.

The trial court set forth the relevant facts as follows:

Pittsburgh Police Officer Jeffrey Abraham ["Officer Abraham"] testified that he was in plainclothes and was patrolling the Beltzhoover section of the City of Pittsburgh, along with his partner on February 20, 2013.  This area is known as a high crime area.  During the patrol, he observed a white [] automobile with an inoperable license plate light.  He and his partner conducted a traffic stop.  Officer Abraham exited the passenger side of the police vehicle and approached the [automobile].  As he was walking towards the [automobile], Officer Abraham observed the front seat passenger, who was later identified as [Evans], "feverishly making a stuffing motion towards the left side of his body."  At that point, Officer Abraham asked [Evans] to exit the vehicle and Officer Abraham, fearing that [Evans] may be concealing a weapon, conducted a pat-

_____
[1] **See** 35 P.S. § 780-113(a)(16).

down search of [Evans]. No weapons were found on [Evans]. However, during the pat-down search, Officer Abraham discovered one rock of crack cocaine. According to Officer Abraham, he felt a pea[-]sized rock in [Evans's] pocket and it felt as though it had a chalky texture. Officer Abraham testified that he had training [in] detection of crack cocaine and he had personally handled crack cocaine on a number of occasions. [Evans] was then placed under arrest[, and charged with one count of possession of a controlled substance].

Trial Court Opinion, 2/14/14, at 1-2.

Evans filed a Motion to Suppress the crack cocaine found during Officer Abraham's pat-down. Following a hearing, the trial court denied the Motion. Thereafter, the trial court, pursuant to a stipulated non-jury trial, found Evans guilty of possession of a controlled substance, and sentenced him to one year of probation. Evans filed a timely Notice of Appeal.

On appeal, Evans raises the following issue for our review: "Did the lower court abuse its discretion in denying [Evans's] Motion to Suppress evidence seized following a '**Terry**[2] Frisk,' where the illegal nature of the evidence seized from [Evans] was not immediately apparent without further manipulation?" Brief for Appellant at 4 (footnote added).

When reviewing the ruling of a suppression court, we must determine whether the record supports that court's factual findings. As long as the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Stevenson**, 744 A.2d 1261, 1263 (Pa. 2000).

---

[2] **Terry v. Ohio**, 392 U.S. 1 (1968).

A police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. **Terry**, 392 U.S. at 30. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons.[3] **Id**. at 24. Since the sole justification for a **Terry** search is the protection of the officer or others nearby, such a protective search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." **Id**. at 26.

Under the "plain feel" doctrine, a police officer may seize non-threatening contraband, detected through the officer's sense of touch during a **Terry** frisk, if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression, and the officer has a lawful right of access to the object. **Minnesota v. Dickerson**, 508 U.S. 366, 375 (1993). Once the initial pat-down dispels the officer's suspicion that the suspect is armed, any further poking, prodding, squeezing, or other manipulation of any objects discovered during that pat-down is outside the scope of the search authorized under **Terry**. **Commonwealth v. Graham**, 721 A.2d 1075, 1082 (Pa. 1998). Where an officer needs to conduct some further

---

[3] The question of whether Officer Abraham had reasonable suspicion to stop and frisk Evans is not at issue in this appeal.

search to determine the incriminating character of the contraband, the search and subsequent seizure is not justified under the plain feel doctrine, and is unlawful. ***Graham***, 721 A.2d at 1082. An officer's subjective belief that an item is contraband is not sufficient unless it is objectively reasonable in light of the facts and circumstances that attended the frisk. ***See Commonwealth v. Zahir***, 751 A.2d 1153, 1163 (Pa. 2000).

Evans argues that the trial court improperly denied his Motion to Suppress because its factual findings were not supported by the record, resulting in the trial court making an erroneous legal conclusion. Brief for Appellant at 13.[4] Evans contends that Officer Abraham's testimony at the

---

[4] In his brief, Evans further asserts that the trial court erred by (1) informing the Commonwealth at the suppression hearing that Officer Abraham's testimony was insufficient to avoid suppression of the crack cocaine; (2) thereafter identifying in open court, in front of Officer Abraham, the specific testimony that was necessary to meet the Commonwealth's burden; (3) then directing the parties to return to court after a lunch break; (4) and then recalling Officer Abraham to provide supplemental testimony in accordance with the trial court's explanation. Brief for Appellant at 13. However, this issue was not sufficiently raised in Evans's Concise Statement of Matters Complained of on Appeal. ***See*** Statement of Matters Complained of on Appeal, 1/23/14, at 1-3. When an appellant is directed to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), the appellant's concise statement must properly specify the error(s) to be addressed on appeal. ***See*** Pa.R.A.P. 1925(b)(4)(ii) (requiring that the concise statement "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"); Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this [Rule] are waived"). Our review discloses that Evans failed to raise this issue in his Concise Statement. We additionally note that Evans did not raise this issue in his Statement of Questions Involved, as required by Pa.R.A.P. 2116(a). Therefore, this issue is waived.

suppression hearing consists of perceptions that would be physically impossible to discern without manipulating and inspecting the item in his pocket.[5] *Id*. at 13, 19. Evans asserts that Officer Abraham did not testify that he felt any unique impression or contour which allowed him to ascertain the illegality of the object he felt in Evans's pocket. *Id*. at 15. Rather, Evans contends, Officer Abraham merely offered the conclusory statement that he knew the object was crack cocaine from his training and experience. *Id*. Evans asserts that, absent a specific tactile impression which allowed Officer Abraham to recognize the object as illegal contraband, without manipulating it, he was not authorized to continue to search Evans's pocket or to reach into the pocket to retrieve the object. *Id*. at 16.

Here, Officer Abraham testified that, during his frisk of Evans for weapons, he "felt what I know from my training and experience without any

---

[5] Evans also asserts that the trial court erred by substituting what Officer Abraham actually stated for what the trial court thought Officer Abraham *meant* to say. Brief for Appellant at 13. The record reveals that, during the suppression hearing, the trial court considered the adequacy of Officer Abraham's testimony, noting that "[t]he word [chalky] seems to suggest something that you would see and it is also suggesting a texture[,] and that would be something the officer could feel. So maybe his choice of words isn't the best[,] but when you talk about texture [that] he felt, my connotation of that is the officer was describing texture more than an appearance. N.T., 9/23/13, at 54. Thereafter, the trial court determined that Officer Abraham had a "good reason" to believe that the object in Evans's pocket was crack cocaine. *See id*. However, this issue was not sufficiently raised in Evans's Concise Statement of Matters Complained of on Appeal. *See* Pa.R.A.P. 1925(b)(4)(ii) and (vii). Therefore, it is waived.

manipulation to be crack cocaine."[6]  N.T., 9/23/13, at 8.  Officer Abraham further testified that the object he felt was "small" and "the size of a pea."[7]  *Id*. at 38-39.  When asked what facts led him to believe that the object in Evans's pocket was crack cocaine, Officer Abraham attributed his belief to the fact that the object was a "chalky white substance," and that it "felt chalky."  *Id*. at 38, 40.  Officer Abraham stated that the object he felt in Evans's pocket was consistent with crack cocaine, which that he had previously felt during 15 to 20 pat-down searches.  *Id*. at 17, 39.

Upon review, the record does not support the factual finding that Officer Abraham felt an item that he immediately recognized as contraband, as the Commonwealth and the trial court maintain.  *See Dickerson*, 508 U.S. at 375 (stating that, to be lawful, the pat-down must reveal a "contour or mass [that] made its identity immediately apparent").  It is difficult for us

---

[6] Contrary to his testimony at the suppression hearing, Officer Abraham testified at Evans's preliminary hearing that he did, in fact, manipulate the object in Evans's pocket.  *See* N.T., 4/23/13, at 5 (where Officer Abraham testified that, during his frisk of Evans for weapons, he "felt from a manipulation of [Evans's] left pants pocket what I know to be crack cocaine.").

[7] The record indicates that Officer Abraham testified at the suppression hearing that the object in Evans's pocket was "small to large."  N.T., 9/23/13, at 38.  The Commonwealth argues that this was a transcription error, and that his actual testimony was that the object was "small and hard."  Commonwealth's Brief at 5.  Appellate courts may only consider facts which have been duly certified in the record on appeal.  *See Commonwealth v. Rios*, 684 A.2d 1025, 1035 (Pa. 1996).  Matters outside the record cannot be considered.  *See id*.  Therefore, we cannot consider the alternate testimony proposed by the Commonwealth, which is not part of the certified record.

to perceive how a pea-sized object, in and of itself, and sight unseen, could have a "contour or mass" that was immediately recognizable as a controlled substance. **See Commonwealth v. Mesa**, 683 A.2d 643, 648 (Pa. Super. 1996) (stating that "it is difficult for us to perceive how a large amount of currency, in and of itself, and sight unseen, could have a 'contour or mass' that was immediately recognizable as a controlled substance.").

Moreover, the record does not support a finding that Officer Abraham's sense of touch is so definitive as to permit the recognition of colors solely by patting the exterior of Evans's pants pocket. Nor does the record support a finding that Officer Abraham's sense of touch was definitive enough to determine the chalk-like consistency of a pea-sized object without manipulating it. Thus, despite Officer Abraham's statement that he immediately identified the object in Evans's pocket as crack cocaine without manipulating it, the record reflects that he could not have determined that the object "felt chalky" unless he, in fact, manipulated it.

Officer Abraham's actions closely resemble the actions of the officer in **Dickerson**. As the **Dickerson** Court noted

> [t]he officer determined that the lump was contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket"--a pocket which the officer already knew contained no weapon . . . . Although the officer was lawfully in a position to feel the lump in respondent's pocket, because **Terry** entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by **Terry** or by any other

exception to the warrant requirement. Because this further search of respondent's pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.

***Dickerson***, 508 U.S. at 379.

Absent Officer Abraham's feel of what he reasonably believed to be a weapon, and absent facts in the record to support his contention that what he felt was contraband, probable cause to conduct the more intrusive search through Evans's pocket did not arise. ***See Commonwealth v. Stackfield***, 651 A.2d 558, 562 (Pa. Super. 1994). As in ***Dickerson***, the police officer in this case overstepped the bounds of the "strictly circumscribed" search for weapons allowed under ***Terry***. ***See Dickerson***, 508 U.S. 366 at 378. Because the search exceeded the scope of a ***Terry*** frisk and pat-down, the suppression court erred by not suppressing the results of the unlawful search. ***See Stackfield***, 651 A.2d at 562.

Judgment of sentence reversed; case remanded for a new trial; jurisdiction relinquished.

Donohue, J., joins the majority.

Allen, J., files a dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2014

- 8 -