J-A23033-24                    2025 PA Super 73

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                             :           PENNSYLVANIA

             v.                            :

JAMES LEE HERLTH                :

          Appellant           :    No. 183 MDA 2024

Appeal from the Judgment of Sentence Entered December 7, 2023
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0005812-2022

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

OPINION BY STABILE, J.:                 **FILED: MARCH 24, 2025**

Appellant, James Lee Herlth, appeals from his judgment of sentence of 7-14 years' imprisonment for possession of controlled substances with intent to deliver ("PWID"). We conclude that the trial court erred by denying Appellant's motion to suppress evidence found in a shoebox during a warrantless search of Appellant's residence. We reverse the order denying suppression, vacate Appellant's judgment of sentence and remand for further proceedings.

On August 31, 2020, the Pennsylvania State Police filed a criminal complaint against Appellant charging him with PWID under 35 P.S. § 780-113(a)(30). On March 16, 2023, the court presided over a suppression hearing in which the sole witness was Trooper Dylan Adams.

Trooper Adams testified that he had been a trooper with the Pennsylvania State Police for about six years. N.T., 3/16/23, at 4. On August 31, 2020, the trooper was on duty conducting a patrol to respond to calls in

the area. *Id.* At around 5:00 a.m., he responded to a call of an overdose at 138 East Broadway in Red Lion, Pennsylvania. *Id.* When he arrived at the scene, an EMS paramedic was already inside the residence providing emergency care to Appellant for an overdose. *Id.* at 5.

Trooper Adams testified that he was not at the scene to provide medical assistance, because he was not a medically trained EMS. *Id.* at 10. Instead, he was present to provide security to EMS because some overdose patients become violent when they are revived with Narcan. *Id.* He also was present "to see what [the patient] overdosed on to possibly make an investigation further, anything that's in plain view that we can see." *Id.*

While standing at Appellant's feet, Trooper Adams saw a shoebox to his left with a closed lid. *Id.* at 6. The shoebox was "maybe not even a foot away from me. It was sitting right next to my left leg." *Id.* The living room was small with everyone inside of it and the trooper could only spin around in a circle. *Id.*

Trooper Adams shined his flashlight into the small manufacturer's hole of the shoebox and he saw what he believed were scramble capsules, a narcotic consisting normally of "a mixture of different drugs but mostly fentanyl." *Id.* at 5. The scramble was directly under the hole through which he shined his flashlight. *Id.* at 7. It "made sense" to Trooper Adams that Appellant overdosed on that, and he "opened the box and seized it." *Id.* Inside the box were 117 scramble capsules in a plastic bag. *Id.* at 9.

The trial court denied Appellant's motion to suppress the evidence seized from the shoebox based on the plain view doctrine. *Id.* at 26-27. A jury found Appellant guilty of PWID, and on December 7, 2023, the court imposed sentence. On Monday, December 18, 2023, Appellant filed timely post-sentence motions, and the court denied these motions on January 5, 2024. On February 1, 2024, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises a single issue in this appeal:

The trial court erred when it denied Appellant's motion to suppress evidence because the drugs and cash found in a closed shoebox in Appellant's home were not in plain view. The officer's use of a flashlight to illuminate the inside of the closed shoebox through a manufacturer's hole in the box to identify the contraband was a search without probable cause and no exception to the warrant requirement applied. The search violated Appellant's rights under the 4th Amendment to the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution.

Appellant's Brief at 4.

In reviewing the denial of a suppression motion,

we are limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Thus, [the] review of questions of law is *de novo*. [The] scope of review is to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole.

*Commonwealth v. Shaffer*, 209 A.3d 957, 968–69 (Pa. 2019).

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and

seizures. ***Commonwealth v. Saunders***, 326 A.3d 888, 896 (Pa. 2024) (cleaned up). "Protection of reasonable expectations of privacy is the primary purpose of the prohibition against unreasonable searches and seizures." ***Id.*** A search or seizure conducted without a warrant is presumptively unreasonable, ***id.***, subject to a few specifically established, well-delineated exceptions such as the exception in question here, the plain view doctrine. ***Id.***

Applying these precepts, we begin by examining whether Appellant had a reasonable expectation of privacy in the shoebox. Appellant must demonstrate (1) that he had a subjective expectation of privacy, and (2) that his subjective expectation of privacy is one that society is prepared to recognize as reasonable and legitimate. ***Commonwealth v. Perel***, 107 A.3d 185, 188 (Pa. Super. 2014). It is well settled that "[t]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view." ***New Jersey v. T.L.O.***, 469 U.S. 325, 337 (1985). "An understanding that personal, private effects are commonly stored in purses, backpacks, luggage, and duffel bags can be gleaned from a casual stroll down any sidewalk. The contents of persons' closed containers are obscured from public view and generally are recognized as private." ***Perel***, 107 A.3d at 190. The expectation of privacy in closed containers "becomes even more robust when a person's private, closed container is within the home of a loved one." ***Id.*** Under these precedents, Appellant had a subjective expectation of privacy

because the scramble pills were stored in a closed container. *See Commonwealth v. Gonzalez*, 2023 WL 2674628, *10 (Pa. Super., Mar. 29, 2023) (citing *Perel*) (defendant had subjective expectation of privacy in fanny pack containing marijuana). Appellant's expectation of privacy was reasonable because society recognizes that persons have an expectation of privacy in the contents of closed containers, particularly containers within one's own home such as the container here. *Perel*, 107 A.3d at 190 (defendant had reasonable expectation of privacy in contents of opaque, zippered bag stored in girlfriend's apartment).

Next, we turn to the central issue in this appeal, whether Trooper Adams' search of the shoebox was permissible under the "plain view" exception to the Fourth Amendment. We hold that it was not.

The plain view doctrine authorizes a warrantless seizure of evidence when (1) the police must observe the object from a lawful vantage point; (2) the incriminating character of the object must be immediately apparent[1]; and (3) the police must have a lawful right of access to the object. *Commonwealth v. Graham*, 721 A.2d 1075, 1079 (Pa. 1998) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). Since any evidence seized by

---

[1] In other words, "the observing officer must have probable cause to believe the evidence in question is contraband or incriminating evidence"). *Saunders*, 326 A.3d at 897 (citations omitted). Probable cause exists "where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Id.* (citations omitted).

police will be in plain view at the moment of seizure, the "question of whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question." *Graham*, 721 A.2d at 1079 (citing *Texas v. Brown*, 460 U.S. 730, 737 (1983)). "Plain view" provides grounds for seizure of an item

> when an officer's access to an object has some prior justification under the Fourth Amendment. "Plain view" is perhaps better understood, therefore, not as an independent "exception" to the warrant clause, but simply as an extension of whatever the prior justification for an officer's "access to an object" may be.

*Graham*, 721 A.2d at 1079 (citing *Brown*, 460 U.S. at 738-39). *Graham* observed that the plain view doctrine "establishes an exception to the requirement of a warrant not to search for an item, but to seize it." *Id.* at 1080. This distinction "highlights the principle that the plain view doctrine permits police officers to seize contraband that is in their purview if an independent justification gives the officer a lawful right of access to the item, but cannot, on its own, justify an officer extending his or her search for that item." *Id.*

Relying largely on *Graham*, Appellant argues that Trooper Adams' search failed to satisfy the plain view doctrine. In our view, *Graham* and our Supreme Court's decision in *Commonwealth v. Norris*, 446 A.2d 246 (Pa. 1982), help resolve the present case. In *Norris,* two police officers heard loud music emanating from the defendant's apartment. The officers knocked

on the door for several minutes and identified themselves before breaking down the door and conducting a limited search of the apartment. One officer seized a knife seen on a nightstand. The officers then thoroughly searched the bedroom and found a gun under a mattress. Our Supreme Court held that exigent circumstances justified the forcible entry into and limited search of the apartment. Moreover, the plain view doctrine authorized the seizure of the knife on the nightstand, because the exigencies of the situation had already justified the intrusion into the bedroom where the knife was discovered. *Id.*, 446 A.2d at 250. The Court found, however, that the plain view doctrine did not authorize the search under the mattress and the seizure of the gun, because "[t]he gun could not have been seen without a thorough search of the bedroom. That search occurred after defendant was securely held and after it was apparent there was no one else in the apartment to endanger the officers." *Id.*

In *Graham*, a police officer realized that an arrest warrant was issued for one of three men he observed on a porch. He approached the group and directed the man who was the subject of the warrant to lie down. He then patted down one of the other men, the defendant, for weapons. After finding no weapons, the officer shined a flashlight down into the defendant's pocket and found a Lifesavers Holes container. The container later was determined to contain crack cocaine. Our Supreme Court held that the pat-down of the defendant was a valid search to protect the officer's safety, relying on *Terry*

*v. Ohio*, 392 U.S. 1 (1968). The Court further held, however, that no justification existed for shining a flashlight into the defendant's pocket:

> Officer Dawley completed the search for weapons authorized under *Terry* before using his flashlight. The subsequent act of shining the flashlight was part and parcel of the search that put the contraband into plain view. Thus, the Commonwealth seeks to use the plain view doctrine, not to validate seizing an already exposed object, but to justify an extended search and subsequent seizure of contraband discovered in the course of a *Terry* stop. Since the plain view doctrine cannot justify extending a warrantless search, we find that it cannot legitimize Officer Dawley's flashlight-aided search of [the defendant's] backpocket.

*Graham*, 721 A.2d at 1080. The Court found these facts distinguishable from

*Commonwealth v. Burton*, 436 A.2d 1010 (Pa. Super. 1981), in which a police officer shined a flashlight into the backseat of a car during a nighttime search:

> The [Commonwealth cites *Burton*] for the proposition that an officer lawfully in a position to make an observation may enhance his ability to see by the use of a flashlight. *Burton* involved a police officer searching a car incident to a lawful arrest for possession of a handgun without a permit. There, the officer shined his flashlight into the backseat, revealing contraband. The Superior Court found that seizure of the contraband was justified by the plain view exception even though the officer needed a flashlight to illuminate the contraband. **However, the reasoning behind *Burton*, that a flashlight may properly illuminate items that would be in plain view during daylight hours, does not apply here, as the Lifesavers Holes container was not an exposed object.**

*Graham*, 721 A.2d at 1080 (emphasis added).

With these decisions as backdrop, we return to the present case. Trooper Adams satisfied the first prong of the plain view test, because he was lawfully

in the living room inside Appellant's home for a "community caretaking" function. Courts recognize that

> law enforcement officers legitimately perform community caretaking activities that also necessitate exception to the warrant requirement. The community caretaking doctrine has been characterized as encompassing three specific exceptions to the warrant requirement: the emergency aid exception, the public servant exception, and the automobile impoundment/inventory exception. Each of these exceptions contemplates that police officers engage in a wide variety of activities relating to the health and safety of citizens unrelated to the detection, investigation and prevention of criminal activity. Nevertheless, community caretaking activities must be performed in strict accordance with the Fourth Amendment.
>
> [T]he emergency aid exception . . . permits police officers to make warrantless entries and searches when they reasonably believe that a person is in need of immediate aid. As with all of the community caretaking exceptions, actions by police pursuant to the emergency aid exception must be independent from the detection, investigation, and acquisition of criminal evidence.

***Commonwealth v. Davenport***, 266 A.3d 707, 710 (Pa. Super. 2021) (citations omitted). As part of his community caretaking function, Trooper Adams was in the living room to provide assistance in the event that Appellant, an overdose patient, became violent while receiving emergency treatment from the EMS paramedic.

Trooper Adams, however, failed to satisfy the second prong of the plain view test, because the object of the search, the closed shoebox, was not immediately incriminating in appearance. To the contrary, this container, a mere shoebox, appeared completely innocuous, so there was no reason to search inside it. In other words, Trooper Adams lacked probable cause to

search the shoebox. *Saunders*, 326 A.3d at 897 (equating second prong of plain view test with probable cause). Nor did Trooper Adams satisfy the third prong because he lacked a lawful right of access to the scramble pills inside the container. The trooper was only present to provide help if Appellant became unruly during emergency treatment for a drug overdose. Under these circumstances, the trooper had no reason to shine his flashlight into the manufacturer's hole of the container, and there was no way for him to see the scramble pills inside the container without taking this unjustified step. Nor did the trooper possess a warrant to search the box or demonstrate probable cause under exigent circumstances to justify a warrantless search to establish a lawful right of access to the contents of the shoebox.

As stated above, we believe our disposition of the present case is supported by *Norris* and *Graham*. In both of those decisions, police officers conducted an initial search that was proper under the Fourth Amendment. The items subsequently seized and suppressed were not in plain view despite the officers having a lawful right to be in the place searched. The present case is slightly different, because Trooper Adams did not enter the home to conduct a valid search but instead entered under the community caretaking doctrine. The initial search herein was Trooper Adams' flashlight search of the shoebox, which plainly was improper under the second and third prongs of the plain view doctrine. As in *Norris* and *Graham*, the proper remedy for this illegal search is suppression of the evidence seized during the search.

The Commonwealth cites multiple cases which held that the plain view doctrine was satisfied where a police officer shined a flashlight at night to illuminate objects that would have been plainly visible during daytime. *See*, *e.g.*, *Commonwealth v. Jones*, 978 A.2d 1000, 1005 (Pa. Super. 2009); *Commonwealth v. Merkt*, 600 A.2d 1297, 1299 (Pa. Super. 1992). We acknowledge, as did *Graham*, that a police officer can shine his flashlight at nighttime to illuminate items that would be plainly visible during the daytime. This principle, however, does not apply here, because the scramble pills were in a closed container and would not have been plainly visible with or without the use of a flashlight had the room been dark at the time the shoebox was searched.

For these reasons, we hold that the trial court erred by denying Appellant's motion to suppress. We reverse the order denying suppression, vacate Appellant's judgment of sentence and remand to the trial court for further proceedings.

Order denying suppression reversed. Judgment of sentence vacated.

Case remanded for further proceedings. Jurisdiction relinquished.

Judge Olson joins the opinion.

Judge Bowes files a dissenting opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/24/2025