J-A23033-24          2025 PA Super 73

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES LEE HERLTH | : | |
| | : | |
| Appellant | : | No. 183 MDA 2024 |

Appeal from the Judgment of Sentence Entered December 7, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005812-2022

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

DISSENTING OPINION BY BOWES, J.:                    **FILED: MARCH 24, 2025**

In my view, Pennsylvania State Trooper Dylan Adams did not execute an unconstitutional search by shining his flashlight into a shoebox's one-inch manufacturer's hole and observing capsules filled with drugs because the contraband was in plain view.  Accordingly, I would uphold the trial court's order denying suppression and affirm Appellant's judgment of sentence.  I therefore respectfully dissent.

The Majority aptly recounts the factual background of this matter, so I need not do so at length.  It suffices to reiterate that during the incident in question, Trooper Adams was lawfully at Appellant's residence aiding emergency medical personnel who were responding to Appellant's overdose.  While standing in the living room immediately near Appellant, the trooper observed a shoebox less than a foot away and which contained on the side a ventilation hole.  Without taking any steps to move or otherwise manipulate

the box, he shined his flashlight into the hole, wherein he could distinctly see a transparent baggy containing white "scramble capsules," which are transparent capsules containing a mixture of drugs. Trooper Adams testified that upon viewing the baggie's contents, he was "100 percent confident" that they were scramble capsules based on his training and experience. *See* N.T. Hearing, 3/16/23, at 8. He therefore opened the shoebox and seized the baggie, as well as other incriminating items contained within the box, without first obtaining a warrant. After being charged with a single count of possession with intent to distribute, Appellant filed a motion to suppress, which the trial court denied. Appellant was subsequently convicted of that crime.

Appellant's sole contention on appeal is that the court erred in denying his suppression motion. My esteemed colleagues cogently and accurately recite the applicable legal principles relevant to this issue. Therefore, I only briefly restate the most salient points:

> An appellate court's standard of reviewing the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Thus, our review of questions of law is *de novo*. Our scope of review is to consider [the evidence offered by the Commonwealth and] so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole.

*Interest of T.W.*, 261 A.3d 409, 416 (Pa. 2021) (citation omitted).

Further, "[t]he Fourth Amendment to the United States Constitution, incorporated to the states by and through the Fourteenth Amendment to the

United States Constitution, and Article I, [§] 8 of the Pennsylvania Constitution protect citizens from 'unreasonable searches and seizures.'" *Id*. "Generally, for a search or seizure to be reasonable under the Fourth Amendment and Article I, [§] 8, police officers must first obtain a warrant before conducting the search or seizure. A search or seizure without a warrant is presumptively unreasonable subject to a few specifically established, well-delineated exceptions." *Id*. (cleaned up).

One such exception is the plain-view doctrine.[1] *See Commonwealth v. Bumbarger*, 231 A.3d 10, 19-20 (Pa.Super. 2020) ("The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant." (citation omitted)). Specifically, the exception permits "the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." *Id*. at 20 (citation omitted).

Based on this standard as articulated, I would determine that Trooper Adams's actions satisfied all three criteria. There is no doubt, as the Majority acknowledges, that the trooper was in a lawful vantage point at the time of the seizure since he was aiding emergency personnel in Appellant's living room in response to an overdose and was engaged in a community caretaking

---

[1] Before discussing this exception, the Majority initially determines that Appellant held a reasonable expectation of privacy regarding the items contained within the shoebox. *See* Majority Opinion at 4-5. I agree as to this point.

function. *See* Majority Opinion at 9. The second prong was met because, upon looking into the shoebox hole with the flashlight, the trooper immediately ascertained that the scramble capsules were illegal contraband. Finally, by observing the capsules without having previously taken any action to improperly manipulate or otherwise "search" by feel the box in which they were stored, coupled with their obviously incriminating nature, Trooper Adams had a lawful right to access them.

As the Commonwealth contends, I believe that this matter falls in line with the historical cases establishing that officers may use a flashlight to illuminate incriminating evidence when they are in a legal vantage point, so long as they do not otherwise exceed the constraints of their authority. *See*, *e.g.*, *Texas v. Brown*, 460 U.S. 730, 740 (1983) (finding that an officer's conduct of shining a flashlight into a stopped car and changing his position to get a better view of certain angles inside the car did not violate the Fourth Amendment); *Commonwealth v. Jones*, 978 A.2d 1000, 1005 (Pa.Super. 2009) (concluding that the plain view exception was met when "officers did nothing more than illuminate activity, two individuals standing on the porch of a suspected drug house, which they could already readily observe from a lawful and non-intrusive vantage point"); *Commonwealth v. Merkt*, 600 A.2d 1297, 1299 (Pa.Super. 1992) ("Relevant case law on this issue clearly shows the use of flashlights during the observation does not negate plain visibility."). From my review of this authority, it is apparent that use of a

flashlight to illuminate an object is not, by itself, a "search" as that term is used for constitutional purposes.

To the contrary, the Majority finds that the second prong under the plain view doctrine was not met because the shoebox itself was not immediately incriminating, and therefore the trooper lacked probable cause to search inside of it with use of the flashlight. **See** Majority Opinion at 9-10. In the same vein, it determines that the Commonwealth did not satisfy the third factor because Trooper Adams lacked a lawful right of access to the scramble pills inside the container. **Id**. at 10. In support of their position, my colleagues primarily rely upon our High Court's decision in **Commonwealth v. Graham**, 721 A.2d 1075 (Pa. 1998).

There, the officer in question performed a **Terry** frisk[2] on Graham to ascertain if he had weapons or contraband. The **Graham** Court summarized that the officer "patted [Graham's] back pockets and felt what he believed was a Lifesavers Holes container. He shined a flashlight down into the pocket and noticed a Lifesavers Holes container which appeared, and was later determined to contain, 3.37 grams of crack cocaine." **Graham**, 721 A.2d at 1076-77. On appeal, our High Court specifically found that the seizure was unconstitutional because "shining a flashlight into [Graham]'s back pocket

---

[2] **See Terry v. Ohio**, 392 U.S. 1 (1968). This Court has stated that during a **Terry** frisk, "a police officer may conduct a limited pat-down search of an individual's outer clothing in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others." **Commonwealth v. Wilson**, 927 A.2d 279, 285 (Pa.Super. 2007).

extended the search beyond that authorized by *Terry*[.]" *Id*. at 80. The Court also stated that the facts of that case were dissimilar to other scenarios wherein police used flashlights to aid in seeing objects in plain view because "the Lifesavers Holes container was not an exposed object." *Id*.

I do not find *Graham* to be dispositive. As indicated, that matter involved a distinct scenario wherein the officer began performing a limited *Terry* pat search for weapons. After recognizing by feel that the container in Graham's pocket was not a weapon, the purpose of the frisk was completed, and the search should have ended. However, the officer manipulated Graham's back pocket as part of the frisk while also illuminating its contents with a flashlight. Hence, the officer was conducting a search which went well beyond the need to detect weapons for officer safety.

The instant matter does not implicate *Terry* in any capacity, as Trooper Adams did not conduct a frisk for weapons or perform any tactile search. There was no testimony that he repositioned the box before utilizing his flashlight, ascertained suspicion concerning the presence of any drug or drug paraphernalia based on feel, or otherwise caused the capsules to be "exposed" based on his conduct. Rather, as stated above, he satisfied the three elements of the plain-view doctrine articulated in *Bumbarger* by merely peering into a hole from a legal vantage point with the aid of his flashlight, without performing any search beforehand or contemporaneously. *See*, *e.g.*, *Commonwealth v. Lehman*, 402 A.2d 539, 541 (Pa.Super. 1979) (holding that regardless of an officer's intention, if he is in a lawful vantage point, he

is permitted to use a flashlight "to bring into plain view what was hidden by the darkness").

This distinction is further highlighted by our Supreme Court's decision of *Interest of T.W.*, which also entailed a *Terry* pat. In that case, a police officer performed a frisk on a juvenile and felt a hard object in the juvenile's left pocket. The officer could not initially identify the object by feel, but feared that it could be a weapon, so he seized it and identified it as a glass medication bottle prescribed to another individual. *See Interest of T.W.*, 261 A.3d at 414. In considering whether suppression of that evidence was proper, our Supreme Court reaffirmed the settled proposition that items detected during a *Terry* frisk could be removed in only two circumstances: the officer has reasonable suspicion that the object is a weapon, or "it is immediately apparent that the object is illegal contraband." *Id*. at 422.

Importantly, the *Interest of T.W.* Court distinguished its facts from *Graham*, attributing to *Graham* the legal proposition that it "was unreasonable for the police officers in [that and a similar case] to remove objects as part of a *Terry* frisk[,] as the police officers determined during those frisks that the objects were not weapons and where the plain feel doctrine did not justify the removal of those objects." *Id*. at 423. In other words, our High Court in *Interest of T.W.* recognized that *Graham* was a case involving the boundaries of *Terry* and the "plain feel" doctrine. Thus, although the Court in *Graham* did discuss and address plain view, the holding was nevertheless informed by the fact that the officers exceeded the limits of

a **Terry** pat in conjunction with the use of a flashlight. Here, however, since Trooper Adams did not remove or seize the capsules following a frisk, I find that **Graham** is inapposite.[3]

In sum, when Trooper Adams was performing a community caretaking function, he was not required to avert his gaze from incriminating evidence that could be seen from his legal vantage point. Further, the fact that the capsules were visible through the hole placed them within the purview of plain view because the container did not conceal those particular contents from visibility, and he did not need to perform a "search" prior to discovering them.

For the reasons above, I conclude that the trial court did not err in denying Appellant's motion to suppress and would therefore affirm the judgment of sentence.

---

[3] I am likewise not persuaded by the Majority's reliance on **Commonwealth v. Norris**, 446 A.2d 246 (Pa. 1982), which is plainly distinguishable. There, the officers in question securely arrested a defendant in his apartment and determined that there was no one else present to endanger them after a brief sweep. Nonetheless, they lifted a mattress in a bedroom and seized a firearm found thereunder without a warrant. Like **Graham**, **Norris** involved physical manipulation of the object obscuring the contraband, the effect of which placed the object into plain view.