## In the INTEREST OF N.L.

### Appeal of N.L., Commonwealth of Pennsylvania.

Superior Court of Pennsylvania.

Submitted June 1, 1999.

Filed Sept. 20, 1999.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

\* Retired Justice assigned to the Superior Court.

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Com., Participating party.

Before DEL SOLE, LALLY–GREEN, and MONTEMURO \*, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, N.L., appeals the order dated August 21, 1997, entering an adjudication of delinquency and commitment. We affirm.

¶ 2 The sole issue raised by Appellant on appeal is whether the trial court erred in denying his motion to suppress physical evidence of a weapon discovered on his person during a *Terry*[1] stop and frisk. The record reflects that the trial court properly denied Appellant's motion.

¶ 3 On August 11, 1997, at approximately 12:00 a.m., Police Officer Marcus Kirkland responded to a radio call relative to a robbery that occurred in the 4400 block of Market Street. N.T., August 21, 1997, at 4–5. There Officer Kirkland and several other police officers spoke to a female complainant. *Id.* at 5. The complainant indicated to the officers that she was at the gas station on the 4400 block of Market Street when two individuals appeared. *Id.* at 10. One of these individuals approached the complainant and said "give it up," uttered some expletives and motioned toward his mid-area, leading her to believe that he had a gun. *Id.* This individual then took the complainant's purse and "some other items of hers" and ran with his companion toward the 4400 block of Sansom Street. *Id.* at 5. According to Officer Kirkland, this incident occurred approximately five minutes prior to the time when he arrived at the scene. *Id.* The police officers then accompanied the complainant to the 4400 block of Sansom Street where they encountered four male persons sitting on the corner stoop. *Id.* The complainant identified one of the four males sitting on the stoop as the individual that had allegedly robbed her. *Id.* at 6.

L.Ed.2d 889 (1968).

Appellant was seated directly beside the alleged perpetrator of the robbery. *Id.* At that time, Officer Kirkland asked the three individuals seated with the perpetrator, including Appellant, "to go up against the wall, to put their hands up to pat them down for the police officer[s'] safety." *Id.* at 7. During this "pat-down," Officer Kirkland found a .25 caliber automatic weapon on Appellant. *Id.*

¶ 4 Prior to trial, Appellant moved to suppress the gun seized from his person, alleging that the search and seizure violated his rights under Pennsylvania and United States constitutions because there was no reasonable basis for the search. After a hearing, the suppression court denied Appellant's motion and found Appellant guilty of possession of a firearm by a minor.[2] The court then entered an adjudication of delinquency and commitment. This appeal followed.

■■■ ¶ 5 Appellant contends on appeal that the trial court erred in denying his motion to suppress the physical evidence of the weapon found on his person because it was the fruit of an unlawful search.

Our scope of review in evaluating the trial court's refusal to suppress evidence is to determine whether the factual findings of the suppression court are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error. Thus, if sufficient evidence is of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge.

*Commonwealth v. Days,* 718 A.2d 797, 801 (Pa.Super.1998) (quoting *Commonwealth v. Marinelli,* 547 Pa. 294, 315–16, 690 A.2d 203, 214 (1997), *cert. denied,* 523 U.S. 1024, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998) (citation omitted)).

■■■ ¶ 6 Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures.[3] Warrantless searches and seizures are unreasonable *per se,* unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

¶ 7 In *Terry v. Ohio, supra,* the United States Supreme Court created an exception to the Fourth Amendment requirement that police have probable cause before conducting a search of a citizen. The *Terry* exception permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." *Commonwealth v. Fitzpatrick,* 446 Pa.Super. 87, 666 A.2d 323, 325 (1995) (citation omitted).

**2.** 18 Pa.C.S.A. § 6110.1.

**3.** The Fourth Amendment to the Unites States Constitution provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. The Pennsylvania Constitution is substantially the same as its federal counterpart and provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8.

¶ 8 In order for a stop and frisk to be reasonable, the police conduct must meet two separate and distinct standards. *Commonwealth v. Martinez*, 403 Pa.Super. 125, 588 A.2d 513, 514 (1991), *appeal denied*, 530 Pa. 653, 608 A.2d 29 (1992). Specifically, the police officer must have a "reasonable, articulable suspicion" that criminal activity may be afoot and that the suspect may be armed and dangerous. *Commonwealth v. Shelly*, 703 A.2d 499, 503 (Pa.Super.1997), *appeal denied*, 555 Pa. 743, 725 A.2d 1220 (1998). *See also Commonwealth v. Robinson*, 410 Pa.Super. 614, 600 A.2d 957, 959 (1991), *appeal denied*, 533 Pa. 599, 617 A.2d 1273 (1992).

¶ 9 In addressing the level of suspicion that must exist, this Court previously stated that "[i]t is a suspicion that is less than a preponderance of the evidence but more than a hunch." *Shelly*, 703 A.2d at 503. *See also Commonwealth v. Epps*, 415 Pa.Super. 231, 608 A.2d 1095, 1096 (1992). In deciding whether reasonable suspicion was present, courts must take into account "the totality of the circumstances—the whole picture." *In the Interest of B.C.*, 453 Pa.Super. 294, 683 A.2d 919, 923 (1996), *appeal granted*, 557 Pa. 643, 734 A.2d 392, 1998 Pa. Lexis 2735 (1998). These circumstances are to be viewed through the eyes of a trained officer, not an ordinary citizen. *Commonwealth v. Fink*, 700 A.2d 447, 449 (Pa.Super.1997), *appeal denied*, 552 Pa. 694, 716 A.2d 1247 (1998). "We cannot evaluate the totality of the circumstances through the grudging eyes of hindsight nor in terms of library analysis, but as understood by those versed in the field of law enforcement." *Shelly*, 703 A.2d at 503 (citations omitted).

¶ 10 Appellant complains that because a *per se* "automatic companion" rule is unconstitutional and because no independent reasonable suspicion existed to establish that he was engaged in criminal conduct and that he was armed and dangerous, the search of his person and subsequent seizure of his weapon were unlawful. We disagree.

¶ 11 The "automatic companion" rule provides that "all companions of [an] arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed." *United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir.1971). The Supreme Court of Pennsylvania has not yet addressed the constitutionality of this rule, although it has noted the existence of the rule in several decisions. *See, e.g., Commonwealth v. Kue*, 547 Pa. 668, 671 n. 1, 692 A.2d 1076, 1077 n. 1 (1997); *Commonwealth v. Shiflet*, 543 Pa. 164, 172 n. 4, 670 A.2d 128, 131 n. 4 (1995).

¶ 12 This Court has ruled that a *Terry* frisk of an arrestee's companion is permissible and, recently, addressed the constitutionality of the automatic companion rule. Cases finding the *Terry* frisk of an arrestee's companion permissible include: *Commonwealth v. Kearney*, 411 Pa.Super. 274, 601 A.2d 346, 348 (1992); *Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 480 A.2d 1209, 1212 (1984); and *Commonwealth v. Hook*, 313 Pa.Super. 1, 459 A.2d 379, 382 (1983).

¶ 13 The constitutionality of the "automatic companion" rule was addressed in *Commonwealth v. Graham*, 454 Pa.Super. 169, 685 A.2d 132 (1996), *rev'd on other grounds*, 554 Pa. 472, 721 A.2d 1075 (1998). The *Graham* court rejected a *per se* rule that a companion of an arrestee is subject to a "pat-down" regardless of the justification for such search as contrary to the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Id.* at 136. In *Graham*, we reiterated the two separate standards that generally must be met for a proper stop and frisk, *i.e.*, the officer must have reasonable suspicion, based on articulable facts, that criminal activity may be afoot and that the suspect may be armed and dangerous. *Id.*

¶ 14 The *Graham* court held that the first prong of the "stop and frisk" test is a nullity in cases involving companions of arrestees.

> In light of the extreme risks facing lawmen in performing arrests, it will always be reasonable for officers to take some actions to insure their safety concerning companions of arrestees. To find otherwise, would be equivalent to turning a blind eye to reality and declaring open season on our protectors of the peace. Consequently, it is inherently reasonable for a law enforcement officer to briefly detain and direct the movement of an arrestee's companion, regardless of whether reasonable suspicion exists that the companion is involved in criminal activity. Such minimal intrusion upon the companion's federal and state constitutional rights are clearly outweighed by the need to extinguish the risks otherwise posed to the lawman's well-being. Accordingly, the first prong of the "stop and frisk" test is a nullity in cases involving an arrestee's companion.

*Id.* at 136–37. Thus, in cases involving the frisk of an arrestee's companion, the sole question becomes whether the police officer had a reasonable belief that the companion was armed and dangerous. *Id.* at 137.

¶ 15 Further, the *Graham* court held that it was reasonable for the police officer to conclude that the appellant may have been armed and dangerous and, thus, to frisk him. *Id.* In reaching this conclusion, we found the following facts determinative: 1) the officer was alone; 2) the officer was making an arrest at 1:45 a.m.; 3) the officer was conducting the arrest in a high-crime and high drug-trafficking area; and 4) the officer observed a bulge in the appellant's pocket. *Id.*

¶ 16 The Pennsylvania Supreme Court subsequently reversed our decision in *Graham* without discussing the constitutionality of the "automatic companion" rule. While the Supreme Court agreed with our conclusion that the initial pat-down search for weapons was justified on the companion of the arrestee, Graham, it found that the officer had exceeded the scope of a permissive pat-down. *Commonwealth v. Graham*, 554 Pa. 472, 477, 721 A.2d 1075, 1077 (1998) (plurality opinion by Nigro, J., with four Justices concurring in the result).

¶ 17 On review of the relevant jurisprudence, we observe that no Pennsylvania court has adopted a *per se* automatic companion rule. Rather, the stop and frisk of an arrestee's companion can be justified depending on the circumstances presented. Said another way, an arrestee's companion may be stopped and frisked when there is reasonable suspicion that the companion is armed and dangerous. Thus, we focus on this question and need not address whether the "automatic companion" rule is constitutional.[4]

¶ 18 Reasonable suspicion that a suspect is armed or dangerous may arise under a number of different circumstances. Close spatial and temporal proximity to the scene of a crime can heighten a police officer's reasonable suspicion. *Commonwealth v. Jackson*, 359 Pa.Super. 433, 519 A.2d 427, 431 (1986). A police officer may reasonably believe himself or herself to be in danger when the crime reported to have been committed is a violent crime, when a perpetrator is reported to possess or have used a weapon, or when the hour is late or the location is desolate. *Jackson*, 519 A.2d at 431 (citations omitted). A frisk might also be implemented to protect innocent bystanders within the vicinity. *Id.*

---

**4.** We note that Appellant devotes his entire brief to a discussion of why the "automatic companion rule" should be declared unconstitutional in this Commonwealth. In doing so, Appellant fails to address this Court's deci-sion in *Graham* or our Supreme Court's reversal of that decision. Moreover, Appellant fails to set forth a meaningful analysis of Appellant's case under a *Terry* reasonable suspicion standard.

¶ 19 All of these factors were present in this case. A crime had been committed, and two male individuals were present during the commission of this crime. The victim believed the perpetrator of the robbery had a gun. It was after midnight. The area in which both the crime and the subsequent arrest of the Appellant's companion occurred was a high drug-traffic area. When Officer Kirkland and the victim approached the individual that she identified as the perpetrator, approximately five minutes after the crime had been committed, the perpetrator was seated with three other males. Any one of these three individuals could have been the second person present when the robbery was committed. Further, if the perpetrator in fact had a firearm as the victim believed, he could have easily handed it to any one of the three individuals seated with him.

¶ 20 Given these circumstances, we do not find that the minimal intrusion of a safety-oriented frisk was unwarranted. Police officers must be able to take certain steps, as was done here, to ensure their safety. While each of the factors set forth above, viewed alone, may or may not be sufficient to establish reasonable suspicion, we must consider the "totality of the circumstances" as viewed through the eyes of a trained officer to determine this issue. In this case, the totality of factors supports the conclusion that the officer's suspicions were not unreasonable or unfounded. Finding a basis for the pat-down, the seizure of the weapon was proper and the trial court properly admitted evidence of it. Appellant's sole argument, therefore, fails.

¶ 21 Order affirmed.