J-S80035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF L.B.-H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| APPEAL OF L.B.-H., A MINOR | |
| | No. 493 MDA 2016 |

Appeal from the Adjudication of Delinquency February 22, 2016
In the Court of Common Pleas of Berks County
Juvenile Division at No: CP-06-JV-0000031-2016

BEFORE:  LAZARUS, STABILE, and RANSOM, JJ.

DISSENTING MEMORANDUM BY STABILE, J.:     **FILED AUGUST 08, 2017**

I respectfully dissent because I believe the Majority incorrectly concludes that Officer Scott did not have reasonable suspicion to conduct a pat-down search of the Appellant's person for weapons.

In **Terry v. Ohio**, 392 U.S. 1 (1968), the United States Supreme Court created an exception to the probable cause requirement prefatory to conducting the search of a person, that permits "a police officer to briefly detain a citizen for investigatory purposes if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." **In Interest of N.L.**, 739 A.2d 564, 566 (Pa. Super. 1999) (quoting **Commonwealth v. Fitzpatrick**, 666 A.2d 323, 325 (Pa. Super. 1995) (citation omitted)); **see generally Terry**, 392 U.S. 1.  Specifically, "for a stop and frisk to be reasonable, the police

conduct must meet two separate and distinct standards[;]" he "must have a 'reasonable, articulable suspicion' that criminal activity may be afoot, and that the suspect may be armed and dangerous." *Id.* at 567. The level of suspicion necessary to justify a stop and frisk "is a suspicion less than a preponderance of the evidence, but more than a hunch." *Id.* (quoting *Coommonwealth v. Shelly*, 499 A.2d 499, 503 (Pa. Super. 1997)). In deciding whether reasonable suspicion is present, we must take into account the *totality of the circumstances* that must be viewed through the eyes of a trained officer, not an ordinary citizen. *Id.*

As the Majority recounts in the matter *sub judice*, Officer Scott testified that he observed a car with the front passenger and rear windows tinted with five passengers inside, including a toddler and an infant. As he observed the windows, a front passenger looked at him, froze, and reached down towards the floorboard of the car. Officer Scott activated his lights and sirens, but the driver, instead of stopping immediately in a nearby well-lit shopping center, proceeded approximately 300 yards to a secluded area before coming to a stop. After stopping and approaching the vehicle, Officer Scott observed a broken steering column, a screwdriver in the ignition, and he smelled marijuana. Upon asking the driver "if there is any guns, drugs or weapons inside of the vehicle," the driver gave Officer Scott consent to search the vehicle and stated that "there is nothing on me. If there is anything inside here it is not mine." N.T. Suppression Hearing, 2/11/16 at 11-12. At that point, the driver gave consent to search the vehicle and the

officer called for backup. When Officer Scott ran the tag of the vehicle, the computer indicated the car was not stolen. When backup arrived, a plan was formulated to take all the adults out of the vehicle to frisk each passenger. Appellant, seated in the back right seat of the car, smoked a cigarette and appeared nervous and scared. When Appellant was asked why he was smoking in a car with two small children, he did not make eye contact or respond. Appellant then was removed from the car and Officer Scott began to frisk the car's occupants. When the Appellant was frisked, Officer Scott felt a hard object in Appellant's right inner thigh, handcuffed Appellant, and asked what was in his pants. Appellant informed the officer it was a gun. Officer Scott then recovered a firearm with six live rounds, including one in the chamber, from Appellant's underwear.

Under the totality of these circumstances, I would conclude that Officer Scott was in possession of reasonable facts, less than a preponderance but more than a hunch, to believe that a frisk of the Appellant was necessary for the officer's safety.[1] Before stopping the vehicle, a front passenger froze and reached towards the floorboard of his car which reasonably might suggest that something like a weapon was being concealed. The driver of

---

[1] It is not necessary to examine whether the officer reasonably believed criminal activity was afoot prior to conducting a stop and frisk of the Appellant, since the legality of the traffic stop is not at issue in this case. *See N.L.,* 739 A.2d at 568 (the first prong of the "stop and frisk" test is a nullity in cases involving companions of arrestees).

the vehicle could have stopped the vehicle in a well-lit shopping center, but instead proceeded 300 yards to a secluded area before coming to a stop, an important fact not considered by the Majority. At this point in time, the officer was certainly justified in proceeding more cautiously with this stop where the investigatory detention would have to occur in a secluded area. Upon approaching the vehicle, the possibility of criminal activity was certainly present when the officer noticed the steering column broken, a screwdriver jammed in the ignition, and he smelled the odor of fresh marijuana. Adding to this mounting suspicion was the additional fact that the driver had no license and no identification. Finally, when the driver was asked whether there were any guns, drugs, or weapons inside the vehicle, the driver's reply was anything but certain. His response that there was nothing on him, but if there was anything in the car, it was not his, certainly left open the reasonable possibility that one of his passengers might be armed. The consequences of the officer not proceeding to ascertain with certainty whether he might be exposed to harm from one of the passengers could be grave. Under these circumstances, the officer should not have to equivocate or gamble on his safety when a minimally intrusive stop and frisk might provide certainty that he was not at risk of a weapons assault. The auspices of potential criminal activity and the possibility of a firearm concealed on one of the vehicles passengers in this secluded location constitute reasonable facts, *less than a preponderance but more than a hunch*, to justify the stop and frisk of the Appellant.

In my opinion, the Majority ignores a totality of the circumstances analysis, and focuses almost exclusively on the conduct of the Appellant as a passenger in the vehicle. While the Majority is correct that mere nervousness alone is insufficient to support a particularized suspicion, it does not consider the Appellant's conduct within the context of the entire stop setting, and in particular, in light of the driver's suggestion that someone in the vehicle might be armed.

Nor do I believe it was necessary for the Majority to analyze the "automatic companion rule" which was held unconstitutional by this Court in *Commonwealth v. Graham*, 685 A.2d 132 (Pa. Super. 1996), *overruled on other grounds*, 721 A.2d 1075 (Pa. 1998). The automatic companion rule permitted a pat-down of an arrestee's companions in the immediate vicinity of an arrestee regardless of whether there was any justification for the search of any companions. Subsequent to *Graham*, this Court held that regardless of whether reasonable suspicion exists that a companion is involved in criminal activity, an officer still must possess a reasonable belief that a companion is armed and dangerous prior to conducting a stop and frisk for weapons. *N.L.*, 739 A.2d at 568. As detailed above, the Commonwealth did not and had no need to resort to the automatic companion rule in this case, because the totality of the circumstances provided the officer with reasonable, articulable suspicion to pat-down the Appellant.

I would affirm the trial court's February 22, 2016 adjudication of delinquency.