J-S29030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAMIR RAISON | : | |
| | : | |
| Appellant | : | No. 3399 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003545-2018

BEFORE:  PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY PELLEGRINI, J.:**FILED AUGUST 9, 2021**

I respectfully dissent because I disagree with the majority that Appellant's rights against unlawful search and seizure were violated under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution because the police officer did not have reasonable suspicion to conduct an investigative stop of Appellant.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] An investigative detention, or Terry stop (**Terry v. Ohio**, 392 U.S. 1, 22 (1968), is lawful if supported by reasonable suspicion that criminal activity may be afoot.  **In re N.L.**, 739 A.2d 564, 567 (Pa. Super. 1999).  A police officer has reasonable suspicion when, under the totality of the circumstances, he is "able to articulate something more than an 'inchoate and unparticularized suspicion or hunch'" that criminal activity may be afoot.  **United States v. Sokolow**, 490 U.S. 1, 7 (1989).  Under such circumstances, the officer may temporarily freeze the situation by briefly detaining the individual whom he
*(Footnote Continued Next Page)*

In this case, a SEPTA Police Officer, Clark Shields (Officer Shields), was on patrol in the area of the Frankford Transportation Center in Philadelphia. He received a radio call and a flash message that informed him that there was a man inside the 555 Gold Pawn Shop who was trying to sell three guns, one of which might have an obliterated serial number, which is illegal. Notes of Testimony, 9/5/19, pp. 9-10. It was later determined not to be true; the serial number was just corroded.

Officer Shields also knew that the 555 Gold Pawn Shop was not a federal firearms licensee and was not legally permitted to purchase or sell firearms. The pawn shop employee described the man as a black man carrying a duffel bag and wearing a jean jacket and red hoodie. SEPTA police also received a photograph that the shop sent to their phones which showed the man that the employee described at the counter of the pawn shop and were advised that the man was headed towards the Transportation Center.

After receiving this information, Officer Shields received a radio call from another officer stating that he had seen the person who matched the description in the main terminal. Officer Shields and two other officers went to the main terminal and saw the Appellant, who matched the photograph and description, talking to another person inside the paid area near the exit.

---

reasonably suspects may be involved in criminal activity to ascertain the individual's identity and gather additional information. ***Commonwealth v. Jackson***, 519 A.2d 427, 430 (Pa. Super. 1986).

Appellant was carrying a large duffel bag and Officer Shields asked, "Can we talk to you?" He testified that he then grabbed Appellant's hand because he was afraid that Appellant was reaching for a gun. Appellant ran and the three officers then apprehended him, retrieved the gun from his waist, a gun from his pocket, another from his duffel bag, along with ammunition and marijuana.

The majority finds that the trial court erred in finding that there was not a reasonable suspicion for two reasons. First, it does so because it finds that Officer Shields did not have a reasonable basis to put his hand on Appellant's hand – the investigative stop - because its viewing of the surveillance video of the arrest showed, contrary to Officer Shields' testimony and the trial court's finding, that Appellant stood still and gave no indication that he was moving his hand towards his waist. Second, it finds that there was no basis for the investigative search because, while Officer Shields knew Appellant was carrying a firearm, he had prior knowledge that Appellant was not permitted to carry a concealed firearm.

Even assuming Officer Shields was mistaken in his belief that Appellant was moving his hand towards his belt where there was a gun and that he did not know that Appellant was not permitted to carry a firearm, based on the report that he received from the 555 Gold Pawn Shop, there was reasonable suspicion for Officer Shields to initiate an investigative search. Reasonable suspicion existed because:

- Police received information from a known source - 555 Gold Pawn Shop - that Raison had entered their store with a duffel bag of firearms attempting to sell them. Officer Shields would have been aware that the pawn shop felt that conduct was so suspicious that it felt compelled to call the police.

- 18 Pa.C.S. § 6111(c) provides that "Any person who is not a licensed importer, manufacturer or dealer and who desires to sell or transfer a firearm to another unlicensed person shall do so only upon the place of business of a licensed importer, manufacturer, dealer or county sheriff's office, the latter of whom shall follow the procedure set forth in this section as if he were the seller of the firearm." Officer Shields was aware that 555 Gold Pawn Shop was not a licensed firearms' dealer that could purchase guns.

- The information came with a photograph of defendant and a description. When officers located defendant close, he was wearing the same clothes as he was in the picture that 555 Gold provided police and had a duffel bag.

- The pawn shop also told police that one of defendant's firearms may have had an obliterated serial number which is illegal. It is illegal to possess a firearm which has an altered, changed, removed, or obliterated manufacturer's number. 18 Pa.C.S. § 6110.2(a). While this turned out not to be true because it was just corroded, Officer Shields could properly take that into consideration as to whether it was necessary to make a Terry stop.

Under the totality of the circumstances, Officer Shields had a reasonable suspicion that something criminal was afoot for the reasons set forth above.

Accordingly, I respectfully dissent.