J-A13029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VINCENT CHRISTOPHER BENENE | : | |
| | : | |
| Appellant | : | No. 2544 EDA 2021 |

Appeal from the Judgment of Sentence Entered November 9, 2021
In the Court of Common Pleas of Bucks County Criminal Division at No(s):  CP-09-CR-0001906-2021

BEFORE:  OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 26, 2022**

Appellant, Vincent Christopher Benene, appeals from the November 9, 2021 Judgment of Sentence entered after a stipulated waiver trial in the Bucks County Court of Common Pleas following his conviction of one count each of Firearms Not to be Carried Without a License and Person Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms.[1]  Appellant challenges the denial of his pre-trial Motion to Suppress.  We affirm.

The facts and procedural history are as follows.  On January 7, 2021, Bensalem Township police orchestrated a controlled methamphetamine buy for the purpose of arresting Mr. Robert Bickel on an outstanding warrant

---

[1] 18 Pa.C.S. §§ 6106(a)(1) and 6105(a)(1), respectively.

from Middlesex County, New Jersey.[2]  Police knew Mr. Bickel carried a firearm and was a member of a motorcycle gang whose members are frequently armed and considered dangerous.

On that day, Mr. Bickel arrived at the location of the controlled drug buy accompanied by Appellant.[3]  The men arrived together, each riding his own motorcycle, and parked side-by-side in the same parking spot.  They dismounted their motorcycles and briefly conversed with a police confidential informant.  The three men then walked away from the motorcycles, whereupon police officers and detectives moved to arrest Mr. Bickel by announcing themselves and instructing the men to get on the ground.[4]  Following the command to get on the ground, Appellant and Mr. Bickel both ran away from police in opposite directions.  Police officers pursued Appellant and ultimately located him hiding under a tractor trailer.  While running from police, police observed Appellant remove a black object, later identified as a functional, loaded revolver, from his coat and throw it to the

_____

[2] The officers did not plan to fully execute the controlled buy; rather, the officers intended to lure Mr. Bickel to the controlled buy site, and immediately after the confidential informant positively identified Mr. Bickel, the officers planned to arrest Mr. Bickel pursuant to the active warrant. N.T. Suppression Hr'g, 9/21/21, at 12, 33.

[3] The controlled buy took place in a high-crime and high-drug trafficking area of Bensalem, Bucks County. *See id.* at 13, 28-29, 54.

[4] Bensalem Police Detective Jack Gohl yelled: "Police.  Get down on the ground." *Id.* at 35, 39.

ground.[5]  After apprehending Appellant, police arrested him and charged him with the above crimes.

On September 15, 2021, Appellant filed an Omnibus Pre-Trial Motion, which included a Motion to Suppress the gun jettisoned by Appellant and incriminating statements he made to police.  Appellant argued that police subjected Appellant to an unlawful investigatory detention when they ordered him to stop merely because he was in the presence of a wanted subject and not because they observed him committing any crime or possessing any contraband.  He further argued that police lacked any reasonable articulable suspicion that Appellant was committing any crime or that he was armed or presently dangerous when they detained him.

On September 21, 2021, the court held a hearing on Appellant's Motion to Suppress, at which Bensalem Police Officer Connor Farnan and Detectives Thomas Jackson and Jack Gohl testified to the above facts. Detectives Gohl and Jackson also testified that, initially, police intended to arrest only Mr. Bickel.  They further testified that they commanded both Mr. Bickel and Appellant to get on the ground for officer safety, which is standard procedure when arresting an individual pursuant to an outstanding warrant and when officers are aware that the target of the arrest is known to

_____

[5] Appellant subsequently admitted that he was not permitted to purchase or possess a firearm.  Police also subsequently learned that Appellant had an open warrant.

carry a firearm. Detective Gohl testified that the officers had no prior plans to arrest Appellant and, in fact, had anticipated that Mr. Bickel would arrive alone. Detective Jackson testified, however, that based on his training and experience, it was not uncommon for someone engaged in a drug transaction to be accompanied by another individual who acts as "muscle" during the transaction.[6]

Following the officers' testimony, Appellant argued that the Commonwealth's evidence indicated that the officers lacked reasonable suspicion that Appellant had committed a crime. From this absence of evidence, Appellant concluded that when police stopped him by commanding that he get down on the ground they violated the "automatic companion" rule.[7] Appellant also asserted that he only jettisoned the revolver after police officers illegally stopped him. Thus, he argued, illegal police conduct precipitated, or coerced, his abandonment of the revolver.

_____

[6] *Id.* at 58.

[7] As explained in greater detail below, the "automatic companion" rule provides generally that "all companions of [an] arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed." **Commonwealth v. Jackson**, 907 A.2d 540, 543–44 (Pa. Super. 2006) (citing **In re N.L.**, 739 A.2d 564, 567 (Pa. Super. 1999)). **See also United States v. Berryhill**, 445 F.2d 1189, 1193 (9th Cir. 1971) (recognizing the "automatic companion" rule).

On November 1, 2021, the trial court denied Appellant's motion to suppress. The court determined that, based on the totality of the circumstances, the police officers had the requisite reasonable suspicion necessary to justify a lawful investigative detention of Appellant, even though he was not the target of their investigation.

On November 9, 2021, following a stipulated waiver trial, the court convicted Appellant of the above charges. The court sentenced Appellant that same day to an aggregate term of four to eight years' incarceration, followed by four years' probation. Appellant did not file a post-sentence motion.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the trial court err in denying Appellant's motion to suppress where the investigative detention was not supported by reasonable suspicion based upon application of the automatic companion rule?

2. Did the trial court err in denying Appellant's motion to suppress where the officers' unlawful and coercive action of ordering Appellant to stop without reasonable suspicion was the causative factor which motivated Appellant to abandon the property?

Appellant's Brief at 10.

**Standard of Review**

We review the suppression court's denial of a motion to suppress to determine whether the record supports the court's factual findings and

whether the legal conclusions drawn from those facts are correct. **Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007). In conducting this review, we consider "only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the [suppression] record as a whole." **Id.** We are bound by the facts as found by the suppression court, so long as they are supported by the record. **Id.** We "may reverse only if the legal conclusions drawn therefrom are in error." **Id.**

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003) (internal citation omitted).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. **In re D.M.**, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." **Commonwealth v. Beasley**, 761 A.2d 621, 624 (Pa. Super. 2000).

This Court has identified three categories of interactions between police and a citizen:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted). Instantly, the parties do not dispute that police officers subjected Appellant to an investigative detention. Rather, they dispute whether police had the requisite level of suspicion for such detention to be constitutionally permissible.

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held "that law enforcement officials may briefly detain an individual for questioning and pat down or 'frisk' the person based on facts that amount to less than probable cause to arrest." *Commonwealth v. Adams*, 205 A.3d 1195, 1203 (Pa. 2019) (citing *Terry*, 392 U.S. at 21). To conduct a constitutionally valid *Terry* stop, "considerations of officer safety must be preceded by a finding that the individual was lawfully subjected to an investigative detention, *i.e.*, that the officer had reasonable suspicion that criminal activity was afoot." *Id.* at 1203. Reasonable suspicion "is a suspicion that is less than a preponderance of the evidence but more than a hunch." *Commonwealth v. Jackson*, 907 A.2d 540, 543 (Pa. Super. 2006) (citation omitted).

In determining whether police officers have a reasonable suspicion of criminal activity, a suppression court must consider the totality of the circumstances "through the eyes of a trained officer, not an ordinary citizen." *Id.* at 543.

Appellant asserts that the suppression court erroneously applied the "automatic companion" rule. As historically defined, the "automatic companion rule grant[ed] authority to the police to stop and search an individual based solely upon his choice of company without requiring reasonable suspicion that either criminal activity is afoot or that the individual is armed and dangerous." *Commonwealth v. Graham*, 685 A.2d 132, 135-36 (Pa. Super. 1996), *rev'd on other grounds*, 721 A.2d 1075 (1998).

In *Graham*, however, this Court rejected as unconstitutional the *per se* rule that a companion of an arrestee is subject to a "pat-down" merely because he is in proximity to an arrestee. *Id.* at 136. Instead, after noting the importance of protecting the safety of police officers and the public, the *Graham* Court held that a stop and frisk of an arrestee's companion is justified where the police officer has a reasonable belief that the arrestee's companion is armed and dangerous. *Id.* at 137. *See also Jackson*, 907 A.2d at 544-45 (applying *Graham* and its progeny to hold that, under the circumstances, the stop and frisk of the appellant/bystander was supported by the officer's reasonable belief that he was armed and dangerous).

**Analysis**

In his first issue, Appellant claims that the trial court erred as a matter of law in denying his suppression motion because the police lacked reasonable suspicion that Appellant was committing a crime, and therefore, illegally detained him. Appellant's Brief at 18. He further claims that, because reasonable suspicion was not present, the trial court erred in applying the "automatic companion" rule because, according to Appellant, in every Pennsylvania case purporting to approve of the automatic companion rule, the court first made "a specific finding by the court that reasonable suspicion for the initial stop is present." *Id.* at 19.[8]

Contrary to Appellant's argument, the trial court expressly noted that it did not apply the automatic companion rule in reaching its decision to deny Appellant's motion.[9] Rather, the court found that the police had

_____

[8] Appellant also argues that the trial court erred in denying his motion where the police, by actively luring Mr. Bickel to the area so that they could arrest him, created a potentially dangerous situation, and then used the potential risk to their safety as an attempt to justify an otherwise unconstitutional detention. Appellant's Brief at 25-26. Appellant has not, however, developed this argument with citation to any authority in violation of Pa.R.A.P. 2119. *See* Pa.R.A.P. 2119(a) (requiring discussion and citation of authorities deemed pertinent to each point of argument). It is, therefore, waived. *Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014) (reiterating that claims that an appellant fails to develop with citation to controlling authority are waived).

[9] The court explained that because the "abundant evidence indicated that permissible investigatory detention circumstances were present in this case . . . the [a]utomatic [c]ompanion [r]ule . . . was not the primary basis for our decision denying Appellant's [m]otion to [s]uppress, since the evidence was
*(Footnote Continued Next Page)*

reasonable suspicion to stop Appellant and that, therefore, Appellant's investigative detention "was justified based on the totality of the circumstances, by the presence of specific and articulable facts which demonstrated criminal activity was afoot, *i.e.*, the unlawful sale of methamphetamine, and by the reasonable belief that Appellant may have been armed and dangerous at the time of his detention." Rule 1925(a) Opinion, 1/19/22, at 4 (citing Decision and Order, 11/1/21, at 15).

In reaching this conclusion, the trial court relied upon the "abundant evidence" provided by the Commonwealth's witnesses indicating that "permissible investigatory detention circumstances were present in this case." *Id.* at 7. This evidence included testimony that: (1) police officers knew Mr. Bickel had a significant criminal history; (2) Mr. Bickel was possibly affiliated with a motorcycle gang whose members were frequently armed and dangerous; (3) the area surrounding the controlled buy was a hotbed for prostitution, drugs, and violence; (4) the officers' training and experience indicated that Mr. Bickel might be accompanied by another individual who would act as "muscle" during the controlled buy; (5) Mr. Bickel and Appellant arrived together on motorcycles, parked in the same parking spot, in the same manner, dismounted their motorcycles together, and

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

clear and abundant that the involved law enforcement officials here reasonably suspected that criminal activity was afoot, and reasonably suspected that Appellant was armed and dangerous." Rule 1925(a) Opinion, 1/9/22, at 7.

approached and conversed with the confidential informant together. The court found Appellant's presence and the synchrony of his actions with those of Mr. Bickel's especially compelling in light of what police knew about Mr. Bickel's criminal history, finding that they created not only a reasonable inference that criminal activity was afoot but also that Appellant was present to serve as "muscle" for Mr. Bickel during the drug transaction and, in such a role, would likely be armed. ***See id.*** at 5-6 (discussing the Commonwealth's evidence and the court's conclusion based thereon).

Our review of the record supports the trial court's factual findings. Accordingly, we find that the trial court reasonably concluded from the Commonwealth's evidence that "the officers and detectives involved in the controlled methamphetamine buy had specific and articulable facts that demonstrated criminal activity was afoot, and that Appellant may have been armed and dangerous." ***Id.*** at 5. Because the instant police officers had the requisite reasonable suspicion, the investigatory detention of Appellant was constitutionally permissible pursuant to ***Terry*** and its progeny, and the trial court properly denied Appellant's motion to suppress.

In his second issue, Appellant argues that the trial court erred in not suppressing the revolver discarded by him because his abandonment of it was coerced by unlawful police action. Appellant's Brief at 29-30.

If a police officer possessed neither probable cause to arrest an individual nor reasonable suspicion to stop the individual and conduct a ***Terry*** frisk, property discarded by the fleeing individual is the fruit of an

- 11 -

illegal seizure and may not be used for evidentiary purposes. ***Commonwealth v. Riley***, 715 A.2d 1131, 1134 (Pa. Super. 1998) (citing ***Commonwealth v. Jeffries***, 311 A.2d 914, 918 (Pa. 1973)).

As we have concluded that the police officers' detention of Appellant was supported by the requisite reasonable suspicion and was, therefore, constitutional, Appellant's abandonment of the revolver was not coerced by unlawful police action. Appellant is, thus, not entitled to relief on this claim.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2022