J-S31010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.D.S.-J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: Z.D.S.-J., MINOR | : | |
| | : | |
| | : | No. 416 EDA 2022 |

Appeal from the Order Entered January 25, 2022
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-JV-000392-2021

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 8, 2022**

Z.D.S.-J. appeals from the dispositional order entered on January 25, 2022, after the juvenile court denied his motion to suppress physical evidence and adjudicated him delinquent of carrying a firearm without a license and possession of a firearm by a minor.  We affirm.

The juvenile court summarized the factual history as follows:

> On December 19, 2021, Officer [Justin] Winters was dispatched to 815 Ferry St., Apt. B, Easton, Pennsylvania to respond to an attempted break-in.  Once on scene, Officer Winters made contact with the caller, Catherine Vasquez, who stated that multiple individuals had tried to break into her apartment and that they were currently positioned in front of her rear apartment door.  Officer Winters entered the complex through the back door and made contact with four males, including [Z.D.S.-J.], standing in front of Apartment B's rear door.  The officer, while waiting for backup, directed all four individuals to keep their hands out of

---

[*] Former Justice specially assigned to the Superior Court.

their pockets. Officer Winters asked what they were doing there. In response, the four individuals explained they had planned to connect with a friend who lived in the complex, but were waiting for a ride because that friend was not home.

After backup arrived, Officer Winters asked one of the individuals to escort him to their friend's apartment to confirm whether the individuals were telling the truth. They made contact with the friend's mother who recognized the individual as a friend of her son, but explained that her son was not home and that the four individuals were not there that evening. On their way back to the others, Officer Winters asked the individual who escorted him whether he had anything on him, such as weapons or drugs. He admitted to possessing a small amount of marijuana and voluntarily handed it to Officer Winters. Both Officer Winters and the individual made their way back to the first floor of the apartment complex.

Subsequently, the officers began running background checks on the four individuals. In the meantime, Officer Winters spoke with the complainant and her daughter. They maintained that the daughter was initially home alone when she heard something banging or hitting the rear door. The daughter also saw the door handle jiggling and heard multiple voices outside the door. Ms. Vasquez returned home shortly thereafter and, upon seeing the door handle jiggling, called 9-1-1.

The background checks revealed that one of the individuals had an outstanding arrest warrant in Northampton County. That individual was placed under arrest and a subsequent search of his person revealed a prop gun.[2] Officer Winters emphasized that he had prior knowledge, from police intelligence, that all four individuals, including [Z.D.S.-J.] were gang affiliated.

___

[2] The prop gun found was an imitation Glock BB gun.

Afterwards, the officers resumed their investigation of the attempted break-in. When asked, all three, including [Z.D.S.-J.], denied any involvement in an alleged break-in or even touching the door handle. Based upon the seriousness of the call he responded to, the knowledge that all individuals were gang affiliated, and the fact that a prop gun was found on one of

[Z.D.S.-J.'s] companions, Officer Winters conducted safety frisks of [Z.D.S.-J.] and the other individuals. Officer Winters felt something hard around the right ankle of [Z.D.S.-J.] that the officer immediately recognized as a gun. When asked if it was another prop gun, [Z.D.S.-J.] stated that it was a real gun and officers confiscated a .22 caliber silver and brown Jennings Model handgun.

Trial Court Opinion, 4/26/22, at 1-3.

Z.D.S.-J. was arrested and charged with carrying a firearm without a license and possessing a firearm as a minor, since he was fifteen years old at the time that the incident occurred. On January 4, 2022, Z.D.S.-J. filed a pre-trial motion to suppress the firearm, contending that Officer Winters did not have the necessary "reasonable suspicion" that Z.D.S.-J. was engaged in criminal activity or that he was armed and dangerous, to allow him to stop and frisk Z.D.S.-J. *See* "Defendant's Motion to Suppress," 1/4/22, at unnumbered 2. The same day, the juvenile court held a suppression hearing on Z.D.S.-J.'s motion. At the hearing, Officer Winters testified, explaining the above-described circumstances surrounding his stop and frisk of Z.D.S.-J. *See* Suppression Hearing, 1/4/22, at 4-25. At the conclusion of Officer's Winters testimony and after receiving arguments from both sides, the court denied the motion, finding "that there was reasonable articulable suspicion that criminal activity was afoot and that [Z.D.S.-J.] may be armed and dangerous." *Id*. at 31-32.

Z.D.S.-J. proceeded directly to an adjudication hearing at which Officer Winters also testified. *Id*. at 32. Ultimately, the juvenile court adjudicated Z.D.S.-J. delinquent for committing acts that would constitute the above-

referenced offenses if committed by an adult. ***Id***. at 46. Appellant was detained pending his disposition hearing. On January 25, 2022, the court held the disposition hearing. At the conclusion, Z.D.S.-J. was committed to a secure residential program for juvenile delinquents. This timely notice of appeal followed. Z.D.S.-J. and the juvenile court both complied with the mandates of Pa.R.A.P. 1925.

Z.D.S.-J. raises the following issue for our review:

Did the trial court err by denying [Z.D.S.-J.'s] pre-trial motion for the suppression and exclusion of evidence, specifically a Jennings Model J-22, .22 caliber silver handgun, because the search and seizure violated the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution?

Z.D.S.-J.'s brief at 9. Although stated as a single question, Z.D.S.-J. actually raises two different arguments challenging the legality of the stop and the frisk, separately.

Preliminarily, we set forth our standard of review:

An appellate court's standard of reviewing the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Thus, our review of questions of law is *de novo*. Our scope of review is to consider only the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole.

***Commonwealth v. Shaffer***, 209 A.3d 957, 968-69 (Pa. 2019) (citations omitted). Where the issue on appeal relates solely to a suppression ruling, we examine "only the suppression hearing record" and exclude from

consideration "evidence elicited at trial." ***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017).

Both the United States and Pennsylvania Constitutions provide coterminous protections against "unreasonable searches and seizures." ***See Interest of T.W.***, 261 A.3d 409, 418 (Pa. 2021). The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention. ***See Commonwealth v. Mackey***, 177 A.3d 221, 227 (Pa.Super. 2017). It is undisputed that the stop-and-frisk at issue in this case constituted an investigative detention in the nature of a protective weapons search. Such a search is governed by ***Terry v. Ohio***, 392 U.S. 1 (1968) pursuant to both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. ***See*** Appellant's brief at 18; ***see also Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010) (recognizing that ***Terry*** "sets forth the reasonableness standard for Article I, [Section] 8 of the Pennsylvania Constitution."); ***see also Commonwealth v. Grahame***, 7 A.3d 810, 816 (Pa. 2010) ("Pennsylvania courts have always followed ***Terry*** regardless of whether the appellant's claim was predicated on the Fourth Amendment or Article I, Section 8 of the Pennsylvania Constitution.").

For a ***Terry*** frisk to be constitutionally sound, the following two conditions must be met:

> First, the investigatory stop must be lawful. That requirement is met in an on-the[-]street encounter . . . where the police officer

- 5 -

reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous.

*Interest of T.W.*, *supra* at 417 (quoting *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009). Reasonable suspicion in this context is defined as "a suspicion that is less than a preponderance of the evidence but more than a hunch." *Commonwealth v. Jackson*, 907 A.2d 540, 543 (Pa.Super. 2006). In determining whether police officers possess reasonable suspicion of criminal activity, a suppression court must consider the totality of the circumstances "through the eyes of a trained officer, not an ordinary citizen." *Id*.

## I.   The Legality of the *Terry* Stop

First, Z.D.S.-J. asserts that the juvenile court erred in denying his suppression motion because Officer Winters lacked reasonable suspicion that Z.D.S.-J. was committing a crime, and thus, had no grounds to conduct a legal stop. *See* Appellant's brief at 20-22. Specifically, Z.D.S.-J. contends that the officer needed to substantiate the caller's claim that four males were trying to break-in to her apartment before stopping Z.D.S.-J. *See* Z.D.S.-J.'s brief at 20-21.

In contrast, the suppression court opined that reasonable suspicion supported Officer Winters investigative detention. *See* Juvenile Court Opinion, 4/26/22, at 6. First, the court found that Officer Winters was legally present, since he was responding to a 911 call reporting a possible burglary involving four males. *Id*.; *see also* N.T. Suppression Motion Hearing, 1/4/22,

at 4-5, 22. The court then concluded that the officer had reasonable suspicion that criminal activity was afoot when Officer Winters encountered Z.D.S.-J. and his three cohorts standing in the exact position that the complainant reported within minutes of receiving the 911 call. *Id*.; *see also* N.T. Suppression Motion Hearing, 1/4/22, at 6, 23. We agree.

Our review of the certified record supports the suppression court's findings. In addition to the facts relayed by the suppression court, the evidence of record also established that when responding to the 911 call, Officer Winters saw no other individuals in the area and immediately recognized the young men as gang members. *See* N.T. Suppression Motion Hearing, 1/4/22, at 23. Accordingly, based on the totality of the circumstances, the officer reasonably believed that criminal activity was afoot and that a stop of Appellant was necessary to investigate the incident further.[1]

## II. The Legality of the *Terry Frisk*

We next consider Z.D.S.-J.'s contention that Officer Winters lacked reasonable suspicion to believe that he was armed and dangerous since he offered an innocent explanation for his presence, was not observed with any

---

[1] Furthermore, this Court has held that the requirement to find that criminal activity is afoot is unnecessary in cases involving the companions of arrestees. *See Commonwealth v. Jackson*, 907 A.2d 540, 544 (Pa.Super. 2006). Herein, one of Z.D.S.-J.'s cohorts possessed illegal narcotics and another was arrested based on an active arrest warrant. Since the officer possessed the necessary reasonable suspicion to stop his companions, it follows that the officer also had reasonable suspicion to briefly detain Appellant.

weapons, and did not engage in any evasive behaviors indicating that he was armed and dangerous. *See* Z.D.S.-J.'s brief at 24-29. In his view, no basis independent of his companion's possession of a prop gun existed to establish that he was armed and dangerous. *Id*. Therefore, the frisk of Z.D.S.-J. was invalid. *Id*. at 26-29.

Again, the juvenile court disagreed, finding that the officer's timely response to a potential break-in, prior knowledge of Z.D.S.-J.'s gang affiliations, and the fact that one of Z.D.S.-J.'s companions possessed a prop gun reasonably led Officer Winters to conclude that Z.D.S.-J. presented a potential danger. *See* Juvenile Court Opinion, 4/26/22, at 7. Thus, the frisk was justified. *Id*. We agree.

To conduct a valid pat-down, a "police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous." *Commonwealth v. Gray*, 896 A.2d 601, 606 (Pa.Super. 2006). Whether a prudent man in the circumstances would be warranted in the belief that the suspect was armed or dangerous may arise in a variety of circumstances:

> Close spatial and temporal proximity to the scene of a crime can heighten a police officer's reasonable suspicion. A police officer may reasonably believe himself or herself to be in danger when the crime reported to have been committed is a violent crime, when a perpetrator is reported to possess or have used a weapon, or when the hour is late or the location is desolate. A frisk might also be implemented to protect innocent bystanders within the vicinity.

*In re N.L.*, 739 A.2d 564, 568 (Pa.Super. 1999).

Furthermore, while our appellate courts have rejected a *per se* "automatic companion rule," the behavior of a suspect's companions can be a relevant factor in the totality of the circumstances analysis if evidence of a common enterprise is advanced. ***See Commonwealth v. Jackson***, 907 A.2d 540, 544 (Pa.Super. 2006) (rejecting the "automatic companion rule" and noting that our courts require individualized suspicion that a suspect may be armed and dangerous before proceeding to a valid frisk); ***see***, ***e.g.***, ***Grahame supra*** at 817 (finding the officer lacked reasonable suspicion to conduct a frisk of a defendant based solely on her presence inside the house where another individual conducted a drug deal, since she was not present for the transaction and the Commonwealth presented no evidence of a shared common enterprise between the two suspects.)

Herein, Officer Winters quickly responded to the report of an active burglary attempt, a violent felony, where he observed Z.D.S.-J. and his three compatriots in the exact location described. The group denied attempting to enter the apartment and claimed they were visiting a friend upstairs. However, after speaking with their friend's mother, Officer Winters was only able to confirm that the males were friends, not that they had been to the apartment that day. Thus, the record does not support Z.D.S.-J.'s contention that the innocent explanation for his presence was proven. To the contrary, Officer Winters' brief investigation led him to conclude that Z.D.S.-J. and his companions were being evasive about the reason for their presence at the

caller's door. Moreover, it is undisputed that Z.D.S.-J. had a close association with the other males. Given Z.D.S.-J.'s close association, the fact that Officer Winters discovered marijuana and an imitation Glock 9 mm BB gun on Z.D.S.-J.'s cohorts before he frisked Z.D.S.-J. was properly considered by the juvenile court as a relevant factor in its analysis. *Id*. Finally, Officer Winters testified that he recognized Z.D.S.-J. as someone who was affiliated with a local gang and the suppression court credited his testimony. Consequently, we discern no error in the juvenile court's finding that Officer Winters possessed individualized reasonable suspicion that Z.D.S.-J. was armed and dangerous and a frisk was needed to ensure officer safety. Thus, the juvenile court correctly determined that the firearm was legally recovered, and we affirm the juvenile court's disposition.

Order affirmed.

P.J.E. Stevens joins this Memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2022

- 10 -